[No. C015689. Third Dist. Mar. 10, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
SYLVIA DINAH REED, Defendant and Appellant.

## COUNSEL

Linda M. Leavitt, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Shirley A. Nelson and Judy Kaida, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**PUGLIA, P. J.**—After the court denied her motion to suppress evidence, defendant entered a negotiated plea of no contest to two counts charging possession for sale of, respectively, cocaine and methamphetamine and admitted committing one of the crimes while on bail (Health & Saf. Code, §§ 11351, 11378; Pen. Code, § 12022.1). On appeal defendant, a Nevada probationer, contends the court erred in denying the suppression motion.

The issue on appeal is whether an unrestricted search condition in a Nevada probation order should be interpreted according to California or Nevada law where the probationer is supervised and the search conducted in California. We conclude that California law prevails. Therefore, we shall affirm.

In a suppression hearing before the magistrate, Deputy Sheriff Rubinoff testified that he and probation officer Fiak went to a residence on Forgotten Way in Paradise because they believed defendant, a probationer from the state of Nevada, resided there. Probation supervision of defendant had been transferred to California. Fiak was defendant's probation officer and he had defendant's Nevada probation documents. The officers went to the residence "to determine [defendant's] actual place of residence, and . . . to make sure that she was following through the conditions of her probation and also to

explain to her . . . exactly what was required concerning her terms and conditions." Fiak told Rubinoff defendant was subject to search pursuant to an "open" or unrestricted search condition. The officers searched the residence and seized cocaine, methamphetamine, and indicia of narcotics sales such as cut papers, scales and plastic baggies.

At the suppression hearing, defense counsel contended federal law required reasonable suspicion to search a probationer and confessed ignorance of Nevada law on the subject. The People argued defendant was subject to an "open" search condition, i.e., one not requiring any reasons to search, and acceptance of that condition constituted a waiver of her Fourth Amendment rights. The magistrate denied the suppression motion, reasoning the officers acted under an "open" search condition, and therefore "The only restriction on an unconditional waiver of rights, in order to become a probationer, is that the searches cannot be conducted for harassment purposes."

In the superior court defendant again moved to suppress. Pointing out there was "no evidence . . . presented to the [magistrate] pertaining to the conditions of probation imposed by the Nevada court . . . ," defendant offered documentary evidence which had not been produced before the magistrate. (See Pen. Code, § 1538.5, subd. (i).) Exhibit A was a copy of defendant's Nevada probation order, reciting the search condition: "You shall submit your person, vehicle, residence and property to search and seizure by any parole and probation officer without a warrant to determine the presence of controlled substances." Exhibit B was a letter from the State of Nevada entitled "Information for Persons Living with Parolees or Probationers" stating that "searches are not conducted for the purpose of harassment, but are only done if there is reason to believe the rules have in some way been violated and evidence may be found." Exhibit C was a document designated Nevada Client Transfer Permission.

In the superior court defendant reiterated her position that federal law requires a reasonable suspicion to justify a probation search. In opposition, the People emphasized they did not stipulate to the introduction of the documentary exhibits offered by defendant; moreover, since those documents were then available to defendant there was no excuse for her failure to offer them to the magistrate. The People argued the superior court should decide the motion on the evidence adduced before the magistrate and, since that evidence showed without contradiction that the search condition was unrestricted, the magistrate's factual finding on that point should not be disturbed.

At the superior court hearing defendant produced another document which was marked exhibit D. Exhibit D purports to be a part of a Nevada probation

manual. It states that probation officers should follow the terms of probation conditions and "Reasonable cause must exist prior to conducting a search." The superior court stated as a preliminary matter that the probation order on its face did not contain a reasonable cause requirement "so any human being reading this, and especially a law enforcement officer acting in the best of good faith and honesty, would believe he could search anytime."

The court found exhibits A, B and C were available to and thus could have been offered by the defense at the first suppression hearing. The superior court concluded a probation officer should not have to resort to an interpretative manual before conducting a probation search, and in any event a manual could not authoritatively contradict a court order. The court recognized the Nevada probation search condition was, on its face, unrestricted. Commenting on the exhibits which indicated there was a tacit restriction, the court believed "[Nevada] should . . . clean up [its] search clause."

The court ruled that there was no good cause to reopen the hearing but even if it were reopened, the exhibits received, and defendant's testimony concerning her understanding of the search condition considered, its ruling would be the same.

On appeal defendant contends that because she was a Nevada probationer, the trial court should have applied Nevada law to this California search; that under Nevada law the search was illegal and the superior court should have admitted the evidence explaining the Nevada probation terms.[1]

In *Seim* v. *State* (1979) 95 Nev. 89 [590 P.2d 1152], the probationer had been convicted of attempted possession of a stolen vehicle and placed on probation. A condition of probation required the probationer to "submit to a search of his person, vehicle or residence without a warrant, by any parole, probation or peace officer to detect the presence of stolen property." (At p. 1155, italics omitted.) A warrantless search of the probationer's property turned up two stolen vehicles. Convicted of possession of stolen property and his probation revoked, the probationer appealed, challenging the warrantless search on the ground, inter alia, that it was not supported by "probable cause." (At p. 1155.) Rejecting this challenge, the Nevada Supreme Court stated: "To justify a warrantless search by a parole or probation officer, the officer must have reasonable grounds to believe that a violation of the parole or probation has occurred. [Citations.] Thus it has been said that even a 'hunch,' if reasonable and held in good faith, would justify a

---

[1]Defendant also contends trial counsel provided ineffective assistance because he failed adequately to raise this point. Since we reach the merits, we need not consider whether counsel was ineffective in failing to preserve this issue for appeal.

search of a parolee's home. [Citations.]" (*Seim, supra,* 590 P.2d at p. 1155; accord, *Allan* v. *State* (1987) 103 Nev. 512 [746 P.2d 138, 140] [parolee].) The court then held the information on which the searching officers acted supplied reasonable cause. (*Seim, supra,* 590 P.2d at p. 1155.)

Penal Code section 11177, subdivision (2), provides that a state receiving a probationer "will assume the duties of visitation of and supervision over probationers or parolees of any sending state and in the exercise of those duties will be governed by the same standards that prevail for its own probationers and parolees." This section is part of the Uniform Act for Out-of-State Parolee Supervision (Uniform Act), which has been enacted by both California and Nevada. (Pen. Code, § 11175 et seq.; Nev. Rev. Stat. §§ 213.180–213.210.)

The People construe Penal Code section 11177, subdivision (2) to mean that a sister-state probationer under California supervision is governed by the laws regulating California probationers. Defendant concedes that "procedural rules and standards related to probation supervision may be imposed," but argues "this procedural statute cannot retroactively alter the substantive provision of sentences [or] plea agreements, particularly those related to waiver of constitutional rights without notice."

The People take the position that even if it be assumed that in Nevada defendant consented only to searches conditioned on the existence of "reasonable grounds," we must presume she was aware of California law. The People argue that by entering this state under the auspices of the Uniform Act defendant consented to be bound by California rules governing probationers. We agree.

■ The Uniform Act is designed to benefit probationers who wish to relocate. (See Pen. Code, § 11177, subd. (1)(a).) This benefit is conditioned on the probationer's agreement to be supervised by the receiving state's officials and to be treated as if he had been placed on probation in the receiving state. Continued supervision of probationers who relocate out of state advances "the fundamental goal of probation and parole to end criminal careers through the rehabilitation of those convicted of crime." (Council of State Governments, Interstate Compact Handbook for Supervision of Parolees & Probationers (rev. ed. 1985) p. 1.) To further that goal the Uniform Act contemplates that if it will advance the rehabilitation of the probationer, he should be permitted to move to a state where family and employment may be found. (See Pen. Code, § 11177, subd. (1)(a).) This achieves the sending state's object of rehabilitation of the offender and hence reduction of crime in the community. (See Interstate Commission on Crime, Handbook on

Interstate Crime Control (1938) Interstate Parole and Probation, p. 50.) The receiving state "will assume the duties of visitation of and supervision over probationers or parolees of any sending state and in the exercise of those duties," to avoid casting an unfair burden on the receiving state, "will be governed by the same standards that prevail for its own probationers and parolees" (Pen. Code, § 11177, subd. (2)). The receiving state "may not give individuals from other states poorer supervision, but on the other hand it cannot be required to give them better supervision than that prevailing in the state." (Interstate Commission on Crime, Handbook on Interstate Crime Control (1966) Interstate Parole and Probation, p. 5.)

 Defendant complains of overly intrusive, not inadequate supervision, but the principle underlying the Uniform Act still applies: the receiving state is, as much as is practicable, not to be burdened with the procedural and administrative complexities of sister-state law, but is to treat the incoming probationer as if he had been placed on probation within the state.

Our sister states have many statutes and regulations governing probationers. And, different states have different rules governing searches of probationers. (See Annot., Validity of Requirement That, as Condition of Probation, Defendant Submit to Warrantless Searches (1977) 79 A.L.R. 3d 1083.) A probationer who leaves his own state to be supervised by another cannot expect to take his own state's rules into the supervising sister state.

The facially unrestricted probation condition to which defendant is subject is a common condition in California and authorizes any search except one conducted in an unreasonable manner or undertaken for purposes of harassment. (*People* v. *Bravo* (1987) 43 Cal.3d 600, 606-609 [238 Cal.Rptr. 282, 738 P.2d 336].) According to *Bravo*, probation search conditions are predicated on the theory of consent whereby the probationer waives the protections of the Fourth Amendment in order to avoid imprisonment. (*Bravo, supra*, 43 Cal.3d at p. 608.) "A search conducted pursuant to a valid consent does not violate the Fourth Amendment unless the search exceeds the scope of the consent. (*Washington* v. *Chrisman* (1982) 455 U.S. 1, 9-10 [70 L.Ed.2d 778, 786-787, 102 S.Ct. 812].)" (*Id.*, at p. 605.)

 The probation condition at issue in *Bravo* required the probationer to "Submit his person and property to search or seizure at any time of the day or night by any law enforcement officer with or without a warrant." (*People* v. *Bravo, supra*, 43 Cal.3d at p. 603, fn. 1, italics omitted.) The condition to which defendant was subject in Nevada required her to "submit [her] person, vehicle, residence and property to search and seizure by any parole and probation officer without a warrant to determine the presence of

controlled substances." Facially, the two conditions are in all relevant respects effectively identical. As the trial court recognized, a California peace officer would construe the defendant's condition as unrestricted.[2] But although not expressly limited, the condition is tacitly restricted by *Seim v. State, supra,* 590 P.2d 1152, to the existence of "reasonable grounds" to search. In consenting to the terms of probation, defendant therefore did not agree to an unrestricted search condition.

*Bravo* rejected the notion that a consent to search must be construed strictly against a waiver of the protections of the Fourth Amendment. "[T]he reasoning of *Schneckloth* [v. *Bustamonte* (1973) 412 U.S. 218 (36 L.Ed.2d 854, 93 S.Ct. 2041)] leads us to conclude that the strict test of waiver . . . and principles of narrow construction have no application in determining the scope of appellant's consent to search given as a condition to the grant of probation. Rather, appellant's waiver of his Fourth Amendment rights must be interpreted on the basis of an objective test. Law enforcement officers who rely on search conditions in probation orders, the probationer himself, and other judges who may be called upon to determine the lawfulness of a search, must be able to determine the scope of the condition by reference to the probation order. We cannot expect police officers and probation agents who undertake searches pursuant to a search condition of a probation agreement to do more than give the condition the meaning that would appear to a reasonable, objective reader. They can neither inquire into the subjective understanding of the probationer, nor analyze the condition in light of legal precedent drawing fine points based on minor differences in the wording of search conditions in other probation orders." (*People v. Bravo, supra,* 43 Cal.3d at pp. 606-607.)

The *Bravo* court construed the condition before it to constitute a waiver of Fourth Amendment rights, except that the probationer retained the right to be free of searches conducted for harassment or in an unreasonable manner. (*People v. Bravo, supra,* 43 Cal.3d at p. 607. See *People v. Mason* (1971) 5 Cal.3d 759, 765, fn. 3 [97 Cal.Rptr. 302, 488 P.2d 630].) The court explained that probation conditions may be conditioned by their express terms: "[I]f a sentencing judge believes that a 'reasonable cause' requirement is warranted in the particular case, either initially or as a modification of the terms of probation [citation], he has the discretion to place such language in the probation search condition. Absent such express language, however, a

---

[2]For purposes of this appeal, we consider defendant's condition "unrestricted" although it is expressly limited to searches "to determine the presence of controlled substances." Defendant makes no claim that the search was overbroad because it was not conducted for the specific purpose of detecting narcotics. (Cf. *People v. Howard* (1984) 162 Cal.App.3d 8 [208 Cal.Rptr. 353].)

reasonable-cause requirement will not be implied." (*Bravo, supra*, 43 Cal.3d at p. 607, fn. 6.)

*People* v. *Bravo, supra*, 43 Cal.3d 600, establishes that peace officers can rely on the express terms of a probation search condition and are not required to interpret them with hornbook in hand. The order in defendant's case was not on its face conditioned on the existence of reasonable grounds or other similar restriction, and therefore the officers who relied on it in searching defendant's house were justified in doing so. They did not act "unreasonably." (Cf. *People* v. *Glick* (1988) 203 Cal.App.3d 796, 802 [250 Cal.Rptr. 315] ["We cannot state categorically that a mistaken interpretation of a foreign law is unreasonable. Instead, we look to the particular facts known to the officer at the time"]; cf. *People* v. *Howard, supra*, 162 Cal.App.3d 8.)

By applying for transfer to California under the Uniform Act, defendant is deemed to know she would be supervised by California authorities under California law and therefore to have consented thereto. As we have indicated, an unrestricted probation search condition authorizes California authorities to search a probationer even without reasonable grounds.

Here, the officers went to defendant's residence pursuant to their responsibility to initiate "courtesy supervision" of defendant and to acquaint her with local rules, verify her address and conduct a search. In doing so, the probation officer was simply discharging his responsibilities under the Uniform Act and thus was serving legitimate probationary purposes. His conduct did not constitute harassment simply because defendant did not anticipate his visit.

The judgment is affirmed.

Sims, J., and Raye, J., concurred.

A petition for a rehearing was denied April 11, 1994, and appellant's petition for review by the Supreme Court was denied June 15, 1994. Kennard, J., was of the opinion that the petition should be granted.