Filed 12/10/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JOSE NUNEZ-DOSANGOS,<br><br>     Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO,<br><br>     Respondent;<br><br>THE PEOPLE,<br><br>     Real Party in Interest. | A171177<br><br>(City & County of San Francisco Super. Ct. No. 18015815) |

Jose Nunez-Dosangos filed a petition for a writ of habeas corpus challenging his ongoing detention in county jail pending trial on a charge of assault with a semiautomatic firearm (Pen. Code, § 245, subd. (b)), a felony offense that carries a potential sentence of three, six, or nine years in state prison. Petitioner has since been released on his own recognizance after pleading guilty to a new charge of accessory after the fact (Pen. Code, § 32), rendering his petition moot, but we elect to decide the case because it presents an issue of broad public interest that is likely to recur. In considering the merits of the petition, we take into account the undisputed allegation that petitioner's accrual of presentence time-served and conduct credits has resulted in a total period of pretrial confinement in excess of the maximum potential sentence for the charged offense, as well as a report of the probation department that assessed petitioner with a low risk of general

1

recidivism.  On this record, we conclude petitioner's pretrial detention was excessive in relation to the government's public safety goals and constituted impermissible punishment in violation of federal and state due process principles.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 11, 2018, petitioner and codefendant Reno Ramos were arrested in connection with the shooting death of Anthony Lamar Patton, Jr., after police officers identified them in surveillance videos taken from the area of the shooting.  During their interrogations, petitioner and Ramos each identified themselves in the videos, and petitioner told police he was forced to carry a gun for Ramos, who took the gun from petitioner's waistband just before the shooting.

A first amended felony complaint charged both defendants with participating in a criminal street gang (Pen. Code, § 186.22, subd. (a)[1]; count 1); murder (§ 187, subd. (a); count 2); and assault with a semiautomatic firearm (§ 245, subd. (b); count 3); and petitioner with attempted robbery (§§ 664, 211; count 4).  Enhancements were added to count 1 alleging that a principal was personally armed with a firearm and that Ramos personally used a firearm and caused great bodily injury (§§ 12022, subd. (a)(1), 12022.5, subd. (a), 12022.7, subd. (a)).  Enhancements added to counts 2 and 3 alleged that a principal was personally armed with, used, and discharged a firearm for the benefit of a street gang and caused great bodily injury and death, and that defendants committed the above felonies for the benefit of, at the direction of, and in association with a criminal street gang, and with the intent to promote, further, or assist in criminal conduct by gang members (§§ 12022, subd. (a)(1), 12022.53, subds. (b), (c), (d), (e)(1), 186.22,

---

[1]     Further unspecified statutory references are to the Penal Code.

subd. (b)(1)(C)).  Firearm and gang enhancements (§ 12022.53, subd. (b); § 186.22, subd. (b)(1)(C)) were also alleged on the attempted robbery count.

On October 16, 2018, petitioner was arraigned on the first amended felony complaint and denied bail.  The case was set for a preliminary hearing on a general time waiver basis.

At the preliminary hearing in September 2023, the magistrate judge stated its belief that the prosecution had presented sufficient evidence of Ramos's intent, but not enough to show petitioner knew of Ramos's intent. The prosecutor acknowledged the positioning of individuals in the surveillance video footage obscured whether petitioner personally handed the weapon to Ramos or whether Ramos pulled the firearm from petitioner's waistband.  Concluding "there really is no evidence" that petitioner knew Ramos was going to fire the gun at anyone, the magistrate judge dismissed the murder charge against petitioner "for lack of failure of proof, lack of evidence."

In October 2023, the People filed an information charging petitioner with murder (§ 187, subd. (a); count 1) and assault with a semiautomatic firearm (§ 245, subd. (b); count 2), with armed principal enhancements on both counts (§ 12022, subd. (a)(1)).  During arraignment on the new information, petitioner waived his right to a speedy trial.

In January 2024, petitioner filed a motion under section 995 to dismiss the refiled murder charge, which the trial court granted.  In April 2024, petitioner filed a motion under section 1382 to withdraw his general time waiver and assert his right to a speedy trial.  The court granted the motion and set June 14, 2024, as the last day for trial.  After various continuance motions were granted, the parties stipulated to a new last day for trial of September 16, 2024.

3

In June 2024, petitioner filed a motion for a bail hearing and release on his own recognizance pending trial. The trial court denied the motion. Petitioner filed additional motions for release in July and August 2024, arguing that he had been incarcerated for almost six years, that he was indigent, and that less restrictive conditions of release were adequate to serve the government's interests because he was not a flight risk and had no prior criminal history or failure to appear in court.

At a hearing on August 8, 2024, the trial court noted that petitioner "has the alleged time in on a [section] 245(b), which is aggravated of nine years. You had one more year for principal arm[ed], that would be one year." In support of his motion for a bail hearing, petitioner's counsel noted the preplea report dated June 7th indicated petitioner's credits and assessed him with a low risk of general recidivism. The court declined counsel's offer of a copy of the report "at this time," stating "the only thing that matters to the Court in the pre-plea report is the calculation of credits. The People are not disputing that he has all of his time in."

The trial court then inquired as to why petitioner had not been charged with murder as an aider and abettor, and whether the surveillance video evidence showed petitioner handing the gun to codefendant Ramos. The court asked the prosecutor if it was "beyond the realm of possibility that you will be asking . . . the Information to conform to prove at the conclusion of evidence to charge him with murder," and the prosecutor responded it was not. When petitioner's counsel insisted that due process barred the court from detaining petitioner "beyond the maximum term," the court responded, "you haven't shown me any case law that says that the Court doesn't have discretion under a case like this to keep someone in custody." The court stated it believed it had such discretion because "the facts of this case is that

4

he handed the gun to the murderer. This case has not been resolved." Moreover, the court did not "believe there's a due-process violation" because "we don't know what's going to be the final outcome of this case. . . . [¶] [T]he People might ask that he be conformed to proof and ask for . . . a 187. I don't know. [¶] But also, he is . . . clearly a danger to public safety, given that he had a gun on his person. That gun led to a murder." Based on these considerations, the court denied petitioner's motion for release.

Petitioner filed a petition for a writ of habeas corpus in this court, alleging his detention in county jail pending trial violates the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution because "he has now accumulated actual days in custody and custody credits that exceed the maximum term of incarceration to which [he] could be sentenced should he be convicted of the firearms charge and the enhancement allegation." On September 13, 2024, we issued an order to show cause and established a schedule for the return and traverse.

On September 20, 2024, the People informed us that petitioner had entered a guilty plea to a felony violation of accessory after the fact (§ 32) and had been released on his own recognizance.

## DISCUSSION

### A. Preliminary Matters

#### 1. *Mootness*

In light of petitioner's guilty plea and own-recognizance release, the due process issue raised in this petition is technically moot. Nonetheless, appellate courts have discretion to decide otherwise moot cases presenting important issues that are capable of repetition yet tend to evade review. (*In re Webb* (2019) 7 Cal.5th 270, 273–274.)

5

The People concede the public importance of the issue raised in this case but argue it is not likely to recur because most criminal defendants will demand a speedy trial before their maximum custodial period has passed, and the delays in this case were largely attributable to the COVID-19 pandemic. We believe there is a reasonable likelihood the due process question raised here may recur in similar cases, particularly where a more serious charge (e.g., murder) is ultimately dismissed, but the trial court prolongs the defendant's detention pending trial based on the possibility that the charge will be refiled. Accordingly, we exercise our discretion to reach the merits of the petition notwithstanding its mootness.

### 2. *Conduct Credits*

The People further contend writ review is premature because petitioner's due process claim is based on his assumption that he will be awarded full presentence conduct credits under section 4019, a determination that has yet to be made. The People urge this court to defer to the sentencing court on the issue and deny the petition. We decline to do so.

In addition to actual credit for time served in pretrial detention (§ 2900.5, subd. (a)), "detainees in local institutions are usually able to earn credit against their eventual sentence for good behavior and work performed. These ' "[c]onduct credit[s]" ' are authorized by section 4019." (*People v. Brown* (2020) 52 Cal.App.5th 899, 902–903, internal footnote omitted.) For each four-day period in which a prisoner is confined, one day shall be deducted from the period of confinement unless it appears by the record that the prisoner refused to satisfactorily perform assigned labor (§ 4019, subd. (b)), and another day shall be deducted unless it appears by the record that the prisoner has not satisfactorily complied with reasonable rules and regulations (*id.*, subd. (c)).

6

Here, petitioner was detained in county jail and was thus entitled to conduct credits under section 4019. The People emphasize, however, that conduct credits are typically determined "at the time of sentencing . . . based on the sheriff's report of 'the number of days that [the] defendant has been in custody and for which he or she may be entitled to credit,' and only after hearing any challenges to the report." (*People v. Lara* (2012) 54 Cal.4th 896, 903.) While that is generally the case, petitioner affirmatively raised the issue of his entitlement to conduct credits in his noticed motions for release, citing the probation department's preplea report in support. (See § 1203.7, subd. (a).) The record contains no indication that the People disputed the preplea report, which recommended that petitioner be granted credit for time served and custody credits. Nor did the People oppose petitioner's release motions on the basis that he was not entitled to full presentence conduct credits. Indeed, at the August 8, 2024, hearing, the People stayed silent when the trial court remarked that the "[t]he People are not disputing that he has all of his time in." On this record, we conclude petitioner's entitlement to conduct credits for purposes of evaluating his due process claim is not materially disputed.[2]

For these reasons, we refuse to deny the petition on prematurity grounds.

**B. Due Process**

"In a crucially important respect, California law is in line with the federal Constitution: 'liberty is the norm, and detention prior to trial or without trial is the carefully limited exception.'" (*In re Humphrey* (2021) 11

---

[2] To be clear, we simply hold the issue of petitioner's conduct credits does not bar our consideration of his due process claim. Our opinion should not be understood as making a binding decision on the ultimate calculation of petitioner's credits.

Cal.5th 135, 156 (*Humphrey*), citing *United States v. Salerno* (1987) 481 U.S. 739, 755 (*Salerno*).) To that end, article I, section 12 of the California Constitution (hereafter article I, section 12) guarantees an arrestee's right to be released on bail except under "narrow" circumstances specified in subdivisions (a) through (c).[3] (*In re Harris* (2024) 16 Cal.5th 292, 301 (*Harris*).) Even then, a person who falls within these exceptions "may nonetheless be granted bail—or release on the person's own recognizance—in the trial court's discretion." (*In re White* (2020) 9 Cal.5th 455, 469.) Outside the circumstances set forth in article I, section 12, subdivisions (a) through (c), an arrestee has a general right under article I, sections 12 and 28(f)(3) to be released on bail or on his or her own recognizance in the court's discretion, subject to further considerations, including (primarily) the protection of the public and the safety of the victim. (*In re Kowalczyk* (2022) 85 Cal.App.5th 667, 691.)

The People maintain there can be no due process violation in this case because the trial court initially denied petitioner bail on public safety grounds, and petitioner does not challenge that decision here.[4] We do not

---

[3] Those exceptions are: "(a) Capital crimes when the facts are evident or the presumption great; [¶] (b) Felony offenses involving acts of violence on another person, or felony sexual assault offenses on another person, when the facts are evident or the presumption great and the court finds based upon clear and convincing evidence that there is a substantial likelihood the person's release would result in great bodily harm to others; or [¶] (c) Felony offenses when the facts are evident or the presumption great and the court finds based on clear and convincing evidence that the person has threatened another with great bodily harm and that there is a substantial likelihood that the person would carry out the threat if released." (Cal. Const., art. I, § 12, subds. (a)–(c).)

[4] The record does not reflect the factual and legal bases for the initial no-bail determination. Nor does the briefing adequately address whether the charged offense under section 245, subdivision (b), constitutes a qualifying

accept this argument for two reasons. First, beginning in June 2024, petitioner filed a series of motions for a new bail determination and/or own-recognizance release, essentially asking the trial court to revisit its initial no-bail determination based on new facts, including the dismissal of the murder count, petitioner's accrual of nearly six years of actual days in custody (with conduct credits), and the probation department's filing of its preplea report detailing petitioner's lack of criminal history and low risk of recidivism. The initial no-bail determination was not permanent and could be revisited in light of new facts and evidence. (*Harris*, *supra*, 16 Cal.5th at p. 320.)

Second, and more importantly, even when a bail determination complies with the provisions of article I, sections 12 and 28(f)(3), "the court must still consider whether the deprivation of liberty caused by an order of pretrial detention is consistent with state statutory and constitutional law specifically addressing bail . . . and with due process." (*Humphrey*, *supra*, 11 Cal.5th at p. 155, internal footnote omitted.) "Even given . . . that pretrial detention may serve legitimate regulatory purposes, it is still necessary to determine whether the terms and conditions of confinement . . . are in fact compatible with those purposes. [Citation.] 'A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose.' [Citation.] Absent a showing of an express intent to punish on the part of the State, that determination generally will turn on 'whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned

---

felony for purposes of denying bail under article I, section 12, subdivisions (b) or (c). (See *In re O'Connor* (2022) 87 Cal.App.5th 90, 104 [interpreting "felony offenses involving acts of violence on another person" under Cal. Const. art. I, § 12, subd. (b), as broader than " 'violent felony' " under § 667.5, subd. (c)].)

[to it].' " (*Schall v. Martin* (1984) 467 U.S. 253, 269 (*Schall*), quoting *Kennedy v. Mendoza-Martinez* (1963) 372 U.S. 144, 168-169.) Thus, the initial no-bail determination, even if valid, was not dispositive of whether petitioner's prolonged deprivation of liberty pending trial ultimately became "excessive in relation to" its intended purpose.

The People further contend that pretrial detention without bail does not "morph[] from legitimate government action to unconstitutional punishment based on the turn of a calendar page." We acknowledge the determination may not necessarily be one of precise demarcation, but we also cannot ignore the due process concerns raised by the length of pretrial detention in this case.

Although we could find no California decisions addressing this issue, federal authorities provide useful guidance. Preliminarily, we note the United States Supreme Court has expressly "intimate[d] no view as to the point at which [pretrial] detention in a particular case might become excessively prolonged, therefore punitive, in relation to Congress' regulatory goal." (*Salerno, supra,* 481 U.S. at p. 747, fn. 4.) However, the Courts of Appeals have held that the length of pretrial detention may "at some point" raise a constitutional issue (*United States v. Gelfuso* (9th Cir. 1988) 838 F.2d 358, 359) and "be challenged under the Due Process Clause" (*United States v. Orena* (2d Cir. 1993) 986 F.2d 628, 630 (*Orena*)).

*Orena* articulated the following approach for addressing such challenges: " '[T]he due process limit on the duration of preventive detention "requires assessment on a case-by-case basis, since due process does not necessarily set a bright line limit for length of pretrial confinement." [Citations.]' To determine whether the length of a pretrial detention violates a defendant's due process rights, [courts] must weigh: (i) the length of

10

detention; (ii) the extent of the prosecution's responsibility for the delay of the trial; and (iii) the strength of the evidence upon which the detention was based," i.e., "evidence of [the defendant's] danger to the community." (*Orena, supra*, 986 F.2d at p. 630; accord *United States v. Cos* (10th Cir. 2006) 198 Fed.Appx. 727, 732 (*Cos*); *United States v. Millan* (2d Cir. 1993) 4 F.3d 1038, 1043; *United States v. Archambault* (D.S.D. 2002) 240 F.Supp.2d 1082, 1085–1088.) Though these federal authorities are not binding on us, we conclude their approach to the due process inquiry appears appropriate for this case and shall apply it.[5]

Here, the petition alleged, and the return did not deny, that the length of petitioner's pretrial detention exceeded the maximum potential sentence that could be imposed under section 245, subdivision (b).[6] Again, we agree with the federal authorities that have spoken on this issue. One district court held it "appropriate to consider the potential terms of imprisonment to which the defendants may be sentenced if ultimately found guilty of the charges as compared to the prospective length of pretrial detention in determining whether the due process rights of a person may be violated." (*United States v. Shareef* (D.Kan. 1995) 907 F.Supp. 1481, 1484, reversed on other grounds in *United States v. Shareef* (10th Cir. 1996) 100 F.3d 1491; see *Cos, supra,* 198 Fed.Appx. at p. 732 [remanding for consideration of due process argument based on *Shareef* and *Millan*].) In another case, the

---

[5]    Prior to our issuance of this opinion, we requested and received supplemental briefing from the parties on the potential applicability of the three-factor analysis applied in *Orena* and other federal decisions.

[6]    We have some reservations about the accuracy of this allegation based on the limited record before us. (See *People v. Culp* (2002) 100 Cal.App.4th 1278, 1283 [setting forth the method to calculate section 4019 credits].) However, the parties do not dispute its correctness and the case before us is moot, so we do not explore the issue further.

district court pointedly concluded that "holding a defendant without bail for longer than he would serve if tried and convicted" violates due process. (*United States v. Lofranco* (N.D. N.Y. 1985) 620 F.Supp. 1324, 1325 (*Lofranco*).) Although we agree that due process does not ordinarily set a " 'bright line limit for length of pretrial confinement' " (*Orena, supra*, 986 F.2d at p. 630), a comparison of the length of petitioner's pretrial detention with his maximum potential sentence provides a compelling measure of the extent of the deprivation of liberty in this case.

In rejecting petitioner's argument that due process required his release because he had "done his maximum time," the trial court posited that the prosecution might later seek a murder conviction and ask that the pleadings be conformed to proof at trial. This conclusion, however, was based on the legal assumption that such an amendment would be permissible in this case. That assumption was wrong: "An indictment or accusation cannot be amended so as to change the offense charged, nor an information so as to charge an offense not shown by the evidence taken at the preliminary examination." (§ 1009.) Such amendment is prohibited "even if [it] would not prejudice the defendant or if the defendant had notice of the facts underlying the new charges." (*People v. Rogers* (2016) 245 Cal.App.4th 1353, 1360.) Thus, contrary to what the trial court understood, " '[t]he test applied, when considering whether to permit an amendment, is whether or not the amended charge is one supported by evidence taken at the preliminary examination.' " (*People v. Winters* (1990) 221 Cal.App.3d 997, 1004.)

The record in this case indicates the evidence taken at the preliminary hearing failed to establish probable cause for the murder charge against petitioner. The magistrate judge did not hold petitioner to answer for murder and dismissed the murder count "for lack of failure of proof, lack of evidence."

12

And when the prosecution refiled the murder charge, the trial court granted petitioner's section 995 motion to dismiss it. True, the trial court seemed, at the August 8, 2024 hearing, to disagree with the magistrate judge's lack of probable cause finding, but the record makes reasonably clear the court had not reviewed the preliminary hearing transcript before denying petitioner's release motion. On this record, and in light of section 1009, we conclude the trial court erred in relying on the possibility of a refiled murder charge as a basis to continue petitioner's detention.

In disputing that petitioner's detention had become unconstitutionally punitive, the People emphasize that pretrial detention and postadjudication sentencing serve distinct policy purposes. That is, while the imposition of postadjudication sentencing is unquestionably punitive in nature (see *In re Nunez* (2009) 173 Cal.App.4th 709, 730 [purposes of sentencing include retribution and rehabilitation]), pretrial detention does not aim to punish but instead serves to protect public safety and ensure an accused's return to court (*Humphrey*, *supra*, 11 Cal.5th at p. 142).

We have no quarrel with these general observations. But where, as here, the parties do not dispute that the length of pretrial detention exceeds the maximum potential sentence that may be imposed, the distinction all but disappears in any practical respect. Petitioner has already been deprived of liberty on a charge of assault with a semiautomatic firearm for longer than a similarly situated person who is actually convicted of that crime under aggravating circumstances would serve (§§ 245, subd. (b), 1170, subd. (b)(2)), taking into account conduct credits available in local and state correctional institutions for this offense (§§ 2931, 2933.5, 4019, subds. (b), (c)). As such, petitioner's confinement has already resulted in the protection of the public for the period of time that the Legislature has designated to accomplish the

13

public-safety-related aims of punishment and rehabilitation. (See § 1170, subd. (a)(1) [determinate sentencing law's goal "is public safety achieved through punishment, rehabilitation, and restorative justice"].) To hold petitioner any longer would appear "excessive in relation to" the intended goal of public safety. (*Schall*, *supra*, 467 U.S. at p. 269.) Indeed, as one court put it, " 'a long period of preventative detention without a finding of guilt, based solely on possible danger to the public, is anathema to American ideals of due process.' " (*Lofranco*, *supra*, 620 F.Supp. at p. 1326.) Furthermore, petitioner's detention for longer than the upper term set forth under section 245, subdivision (b), runs contrary to the Legislature's concerns over the uniformity and proportionality of sentences under the determinate sentencing law. (See § 1170, subd. (a)(1).)

As previously mentioned, an additional factor used by federal courts to assess the constitutionality of pretrial detention is the extent to which the prosecution is responsible for the delay of trial. (*Orena*, *supra*, 986 F.2d at p. 630.) On this score, the People maintain that petitioner's dilemma was "largely wrought by his own hands" because he elected to waive his right to a speedy preliminary hearing and trial at the outset of the case and moved or stipulated to several trial continuances.

The People are correct that this case initially proceeded on a general time waiver basis after arraignment. Moreover, the record does not disclose what exactly transpired during the several years that elapsed between the arraignment and the preliminary hearing. Even so, we cannot say that petitioner bears primary responsibility for his prolonged detention. We may reasonably assume petitioner initially elected to waive his speedy trial right in order to have more time to prepare a defense to the charge of murder, and it appears petitioner expended significant time and effort securing the

14

dismissal of that count, not once but twice, during the course of this case. And though the preplea report confirmed petitioner's substantial conduct credits and low recidivism risk, the People persisted in opposing his release for several months following petitioner's June 2024 motion for release. The People also contributed to the trial court's erroneous belief that the information could be conformed to proof to permit refiling the murder count. (See § 1009.) In the apt words of another court, "[i]t suffices for present purposes to conclude that the Government, even if not deserving of blame, bears a responsibility for a portion of the delay significant enough to add considerable weight to [petitioner's] claim that the duration of detention has exceeded constitutional limits." (*United States v. Gonzales Claudio* (2d Cir. 1986) 806 F.2d 334, 342–343.)

Equally unpersuasive is the People's contention that petitioner bears responsibility for his prolonged detention because he could have ensured his pretrial release by entering into an open plea or pleading guilty to the charged offense. Petitioner was entitled to pretrial release in accordance with due process whether or not he was willing to forgo his claim of innocence.

Finally, we address the third *Orena* factor, the strength of the evidence upon which the detention was based. (*Orena, supra*, 986 F.2d at p. 630.) As discussed, the record does not disclose the factual and legal bases for the initial no-bail determination, and as the People repeatedly emphasize, petitioner has not challenged the validity of that initial decision. Nevertheless, it is important to recognize that the initial no-bail determination was made shortly after petitioner's arrest when he was first arraigned on several felonies, including murder, and was not permanent (see *Harris, supra*, 16 Cal.5th at p. 320). That murder count was eventually

15

dismissed for lack of probable cause, and at the time of petitioner's motions for pretrial release, he was being held on a single count of assault with a semiautomatic firearm. Meanwhile, the probation department filed its preplea report detailing petitioner's lack of a prior criminal history and low risk of recidivism. The report also disclosed facts relevant to petitioner's low risk of flight, such as his lifelong residence in San Francisco, his continuing contact with family, and his history of gainful employment. Thus, even if the propriety of the initial no-bail determination is outside the scope of this proceeding, the record amply establishes that as the case wore on, petitioner's continued confinement on public safety grounds began to exceed that which due process will tolerate.

The People advance certain policy arguments against petitioner's release, none of which is persuasive. They contend petitioner's construction of the law will incentivize prisoners to "age up" their cases to the maximum prescribed sentence in order to serve the entire term of incarceration in county jail rather than state prison. Even accepting that a prisoner might be so motivated (see, e.g., *People v. Noyan* (2014) 232 Cal.App.4th 657, 665, fn. 7 [state prison sentence is "distinctly different from" and potentially "harsher" than incarceration in county jail]), trial courts may address such efforts in the appropriate exercise of their broad discretion to reject continuance requests that lack good cause. (See *People v. Jenkins* (2000) 22 Cal.4th 900, 1037.)

The People also emphasize that there is a marked difference between releasing a defendant before and after a felony conviction, and that public safety concerns support extended pretrial detention in circumstances such as these. For instance, the People note, though the law prohibits a convicted felon from purchasing or possessing a gun, these types of important public

16

safety restrictions are not in place if a defendant such as petitioner is granted pretrial release. We are not persuaded.

Contrary to the People's suggestion, there are indeed less restrictive alternatives that could adequately vindicate the state's interest in public safety while respecting petitioner's due process rights. For example, the trial court could impose reasonable pretrial release conditions, including restrictions on purchasing and possessing firearms. (See *In re York* (1995) 9 Cal.4th 1133, 1137–1138 [court may condition own-recognizance release on defendant's agreement to submit to drug testing and warrantless searches and seizures]; *In re McSherry* (2003) 112 Cal.App.4th 856, 860–861 [courts possess inherent authority to impose conditions associated with release on bail]; see also *United States v. Perez-Garcia* (9th Cir. 2024) 96 F.4th 1166, 1171 [firearm condition on pretrial release constitutional as applied].) In sum, we find the People's contention on this point unavailing.

## DISPOSITION

We conclude petitioner's pretrial detention in excess of his maximum potential sentence on a charge of assault with a semiautomatic firearm under section 245, subdivision (b), was excessive in relation to the government's public safety goals and thus constituted impermissible punishment in violation of petitioner's due process rights. However, as a result of petitioner's guilty plea and release on his own recognizance, we need not provide further relief and instead dismiss the petition as moot. (See *In re Stevens* (2004) 119 Cal.App.4th 1228, 1240.)

17

_____
Fujisaki, J.

WE CONCUR:


_____
Tucher, P.J.


_____
Rodríguez, J.

Trial Court:        City & County of San Francisco Superior Court

Trial Judge:        Hon. Eric Fleming

Counsel:            Law Office of Cheryl Wallace, Cheryl Wallace for Petitioner

                    Brooke Jenkins, District Attorney of San Francisco County,
                        Kathleen McBride, Deputy District Attorney for Real
                        Party in Interest

*In re J. Nunez-Dosangos* (A171177)

19