Filed 12/23/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, <br>     Plaintiff and Respondent, <br>         v. <br> SHAWN LEE PERROT, <br>     Defendant and Appellant. | A168485 <br><br> (Humboldt County <br> Super. Ct. No. CR2301908) |

After serving more than 16 years of a 21-year prison term, appellant Shawn Lee Perrot was paroled subject to certain conditions imposed by the Department of Corrections and Rehabilitation (CDCR). His commitment offenses, all involving child victims, included forcible rape, oral copulation on a child, and distribution of lewd material to a minor.

In this parole revocation appeal, Perrot claims three parole conditions he was found to have violated—prohibitions on (1) accessing and using computer devices, (2) associating with known sex offenders, and (3) possessing sexually stimulating devices—are unconstitutionally vague and overbroad.

We reject these claims and affirm.

1

# I. BACKGROUND[1]

## A.

In June 2004, a Humboldt County jury convicted Perrot of two counts of forcible rape; three counts of committing a lewd or lascivious act on a child of 14 or 15 years of age; five counts of unlawful sexual intercourse (statutory rape); one count of distribution of lewd material to a minor; and one count of committing a forcible lewd act (oral copulation) on a child. (*People v. Perrot* (May 17, 2006, A107378) [nonpub. opn.] (*Perrot I*).) Our 2006 opinion affirming these convictions summarized the evidence against Perrot as follows.

"[Perrot]'s convictions stem from a series of sexual acts with two minor victims, B.H. and J.J. B.H. was 16 at the time the charged offenses took place; J.J. was 14." (*Perrot I, supra*, A107378.) "B.H. met [Perrot] while attending drag races in the summer of 2002. She had consensual sexual intercourse with him on several occasions in the weeks that followed. . . . [Perrot] also showed B.H. child pornography on his computer." (*Ibid.*)

"J.J. also met [Perrot] in the summer of 2002 at street races. At some point while he and B.H. were having intercourse, [Perrot] asked her whether she could introduce him to younger girls. B.H. ignored [Perrot]'s request, but he raised it again later and also asked whether B.H. had sexual interest in

---

[1] We grant Perrot's request to augment the record to include documentary exhibits presented at his parole revocation hearing. We also grant the Attorney General's request that we judicially notice an order entered in related proceedings on a petition for habeas corpus by Perrot, and a docket sheet from Sexually Violent Predator (SVP) proceedings that were initiated against Perrot but dismissed before he was paroled. Our background summary is based on information taken from the record as augmented, as well as from the material we have judicially noticed.

younger girls. He asked B.H. whether she could arrange a time when he could be with J.J." (*Perrot I*, *supra*, A107378.)

"J.J. had sexual intercourse with [Perrot] three times. On the first occasion, J.J. was asleep on the floor in her bedroom, and [Perrot] woke her up and forced her to have sex with him. On the second occasion, [Perrot] brought J.J. and B.H. to his trailer in Loleta, and [Perrot] had sexual intercourse with J.J. B.H. testified that J.J. did not offer any physical resistance on that occasion." (*Perrot I*, *supra*, A107378.)

"On the third occasion, [Perrot] forced J.J. to have sex with him in the bedroom of his trailer while J.J.'s 11-year-old cousin was in the next room. [Perrot] stated that he would go after J.J.'s cousin if J.J. did not have sex with him. The cousin testified that she heard J.J. screaming in the bedroom when she was with [Perrot], and the cousin also heard the sound of slapping or hitting." (*Perrot I*, *supra*, A107378.)

Prior to his 2004 conviction, Perrot had a lengthy history of sexual offenses against minors, including three felony convictions in Mendocino County for unlawful intercourse with a minor. At his trial in 2004, "[t]he jury . . . heard testimony from three witnesses," N.C., N.S. and J.K., regarding these Mendocino County offenses. (*Perrot I*, *supra*, A107378.)

"N.C. testified that when she was 14, she passed out after she drank alcohol possibly purchased by [Perrot], and she woke up to find [Perrot] having sex with her. She also had sex with [Perrot] the next morning. N.C. told [Perrot] that it hurt, but he did not stop." (*Perrot I*, *supra*, A107378.)

"N.S. testified that he attended a party hosted by [Perrot] where people were drinking and 'partying.' He witnessed a girl, S.M., pass out in her sleeping bag after drinking heavily, and about a half hour later he saw

3

[Perrot] on top of her, apparently having sex with her." (*Perrot I, supra,* A107378.)

"J.K. testified that she attended a party at [Perrot]'s apartment when she was 16. She drank Jack Daniels and tequila provided by [Perrot]. At one point, she was lying half awake on a couch, and she became aware that [Perrot] was having sex with her. J.K. told [Perrot] to get off her, and she pushed him away with the assistance of her boyfriend." (*Perrot I, supra,* A107378.)

Perrot was on probation for his Mendocino County offenses when he committed the Humboldt County offenses for which he was convicted in 2004. In addition, at his 2004 trial, Perrot "admitted . . . that he had a 1993 felony conviction for lewd and lascivious acts [on a minor] in Florida . . . ." (*Perrot I, supra,* A107378.) For his Florida conviction in 1993, he was sentenced to a five-and-a-half-year prison term. The record is unclear how much of that term he served.

### B.

In September 2020, at the height of the pandemic, Perrot was released from state prison to the Humboldt County Jail. He refused to sign conditions of parole; the CDCR initiated SVP civil commitment proceedings against him; and he remained in custody until April 2022. At that point, the SVP proceedings were dismissed, and Perrot was released on parole. Before his parole release, he was evaluated according to the CDCR's risk assessment tool known as Static 99R, which evaluates male sex offenders for their risk of reoffending. His Static 99R level for reoffense was 6, in the "High" range.

Upon release, Perrot signed a set of conditions of parole, including certain special parole conditions. Among these conditions were Special Conditions of Parole (SCOP) 53, 17 and 31. SCOP 53 (the computer access and use condition or SCOP 53) states, "You shall not have access to or use a

4

personal computer, electronic communication device, and peripheral devices (e.g., printer, scanner, camera, storage device)." SCOP 17 (the association with sex offenders condition or SCOP 17) states, "You shall not associate with any known sex offenders, except as previously approved or instructed by your parole agent." And SCOP 31 (the sexually stimulating devices condition or SCOP 31) states, "You shall not view, possess, or have access to any sexually oriented or sexually stimulating objects, articles, magazines and/or devices, or pornographic material in any format, including electronic communication devices (e.g., movies, photographs, drawings, literature, websites, texts, etc.)."

Perrot subsequently filed an administrative grievance with the CDCR's Office of Grievances challenging the computer access and use condition. He argued he needed to access the Internet for "his job that requires him to access the Internet for his paralegal work and legal research for his pending court matters." In November 2022, the Office of Grievances largely rejected this challenge because "child pornography was located on [Perrot's] computer and [is] part of his offense," but gave Perrot permission to "utilize the Humboldt County Law Library's computer for his legal research and paralegal work during their hours of operation."

Apparently unsatisfied with the outcome of his CDCR grievance proceeding, in March 2023 Perrot filed a petition for writ of habeas corpus renewing his challenge to the computer access and use condition. On April 14, 2023, Judge Gregory Kreis issued an order in the habeas proceedings (the April 14, 2023 Order) granting a temporary stay. The order explained, "This Court recognizes the ubiquity of computer access in today's society and the necessity of computer access to engage in legal research," and in accordance with that recognition, temporarily lifted the categorical ban on computer access and use imposed by SCOP 53.

5

For the remaining duration of the habeas proceedings, the April 14, 2023 Order temporarily authorized the CDCR's Division of Adult Parole Operations (DAPO)—which supervises Perrot's parole—to "designate a computer and any and all peripheral devices provided by [Perrot] for the purpose of [Perrot] engaging legal research to support his Writ of Habeas Corpus." The April 14, 2023 Order stated that a violation of the restrictions placed on Perrot's computer use would be a violation of his parole.

Pursuant to the terms of the April 14, 2023 Order, Perrot's parole agent, Thorin McCovey of the DAPO, gave Perrot permission to use a designated computer for the limited purpose of conducting legal research to support his pending habeas petition. On May 4, 2023, Perrot showed Agent McCovey a laptop he intended to use for this purpose. Agent McCovey informed Perrot that the designated laptop was the only device he was authorized to use. Perrot told Agent McCovey he did not possess any other computer devices.

On June 30, 2023, Judge Kreis dissolved the temporary stay of the computer access and use condition and denied Perrot's habeas petition, concluding that the petition failed to state a prima facie case for relief. The denial order made a series of findings concerning the level of danger Perrot poses to the community. Perrot "has a long history of criminality, of sexual crimes against children, and of failing to follow the terms of his probation or parole and his confinement," Judge Kreis found. Perrot's "crimes span almost a decade. He committed a sex crime against a minor sixteen or under in Florida in 1993, and was sentenced to five and a half years. . . . Then [Perrot] moved to Humboldt County and committed additional sex crimes on four minors in 1999, and was placed on felony probation."

"Then," Judge Kreis found, "in 2002, [Perrot] committed an additional twelve sex crimes against three children—including rape by force or fear and displaying child pornography to one of his victims via computer. . . . [¶] [Perrot] was on felony probation for the 1999 crimes, meaning that he broke the rules/terms of his probation when he committed the 2002 crimes. This rule breaking behavior has seemingly not abated, as [Perrot], by his own admission, obtained a cellular telephone [while in prison] in contravention of the rules and regulations of the CDCR during the COVID-19 pandemic."

Judge Kreis observed that "[t]he Police Report for the 2002 crimes . . . contains allegations that [Perrot] displayed child pornography to the victim on a computer. It also contains allegations that he displayed child pornography recorded on a video cassette and that [Perrot's] computer contained evidence that [Perrot] possessed child pornography." Although Perrot was not convicted of possessing child pornography, Judge Kreis specifically found that the distribution of lewd material to a minor conviction was based on evidence that he displayed child pornography to his victim using a computer.

Finally, Judge Kreis found, "[Perrot] also has admitted it was determined that he violated his parole since his release by entering a residence without permission and loitering near where children are present . . . . In addition, [Perrot] started a computer and Internet business" offering paralegal services "that would specifically require him to violate his conditions of parole." Because he was alleged to have done this through a third party, Judge Kreis found the use of an intermediary "seems to indicate [he] thought he was not allowed to do so."

Based on these findings, Judge Kreis concluded that "[Perrot's] long history of victimizing minors, and the records demonstrating that he used a

7

computer and child pornography to aid in his efforts, support the use of the most restrictive means to ensure that [he] does not use a computer and child pornography to lure another unsuspecting potential victim." Characterizing Perrot's circumstances as "an extreme case," Judge Kreis determined that SCOP 53 "is narrowly tailored to the government's purpose of preventing [Perrot] from using a computer and the Internet to access child pornography and use it to seduce minors."

The denial of habeas relief superseded the April 14, 2023 temporary order, and going forward, left in place only the modification ordered by the Office of Grievances.

### C.

About the same time as the denial of Perrot's petition for habeas corpus, the DAPO filed a petition for parole revocation, alleging that he violated, among other special conditions of his parole, the computer access and use condition, the association with sex offenders condition, and the sexually stimulating devices condition. After considering testimony from Agent McCovey, Perrot, and K.W. (Perrot's girlfriend) at a probable cause hearing, Judge Kelly Neel found probable cause to proceed.

With respect to the computer access and use condition, the evidence showed that, on June 29, 2023, Agent McCovey searched Perrot's residence and discovered over a dozen unauthorized devices—all of which were accessible by Perrot. These included two laptop computers (in addition to the designated laptop), two cell phones (including a smartphone), two Internet capable video game consoles, and 10 digital storage devices.[2]

---

[2] Agent McCovey testified that Perrot was permitted to use a cell phone with talk and text capability (without Internet access), but not an Internet-connected smartphone.

8

The evidence further showed that Perrot used the designated laptop in a manner that exceeded the scope of the April 14, 2023 Order. Specifically, Agent McCovey found a folder entitled "WIC 6603 Consulting" containing files labeled with Penal Code section 290 sex offenders' names, as well as personal e-mails. Perrot made no claim that these files were for work on his own habeas proceedings, and to the extent they involved "paralegal work" for others, that work predated entry of the April 14, 2023 Order. Perrot also was using the designated laptop for e-mail linked to a cloud account[3] with a two-factor authentication security that prevented Agent McCovey from accessing it.

With respect to the association with sex offenders condition, Agent McCovey testified about the pre-approval required by SCOP 23 for any prospective employment Perrot wished to take. Under this procedure, Agent McCovey would speak to the employer, go over Perrot's criminal history, and ensure that the employer was aware of Perrot's requirement to register per Penal Code section 290 as a sex offender and that Perrot was restricted from access or association or contact with children or known sex offenders. Agent McCovey testified that he was unaware of the existence of WIC 6603 or that Perrot had a paralegal certification, and that approval to operate the business would not have been granted had it been requested.

Perrot described WIC 6603 as a "consulting firm that specializes in helping attorneys navigate the labyrinth of the [SVP Act]." Through this business, Perrot testified that he performs paralegal support services for a public defender's office on SVP cases, but he claimed none of the work

_____

[3] Agent McCovey testified that Perrot did not have permission to use a cloud account.

involves direct client interactions.[4] Perrot did admit, however, that SVP clients occasionally called him to thank him for his work, which he thought was not a problem because he interpreted the term "associate" to include only face-to-face contact with sex offenders.

Finally, with respect to the sexually stimulating devices condition, the evidence showed Perrot possessed a penis pump, which he admitted was his and that he used it to help achieve an erection, a technique suggested by a doctor because of a medical condition. A dildo was also found in Perrot's bedroom. Although Perrot denied the dildo was his—his girlfriend, K.W., claimed it was hers—it was not locked away or kept in a location in his residence beyond Perrot's ability to access.

In addition to the explanations Perrot gave with respect to the allegations he violated the association with sex offenders and sexually stimulating devices conditions, he testified that he believed he had permission to use the computer found in his home; that the modification to SCOP 53 granted by the CDCR's Office of Grievances permitted him to access computers and use the Internet for paralegal work, something he was doing while incarcerated; and that he gave Agent McCovey all of the password information necessary to access his security encrypted files.

At the parole revocation hearing, the parties stipulated that the court could consider the transcript of the probable cause hearing, and the court also admitted various documentary exhibits. Among these exhibits was a written statement from K.W. attesting to positive aspects of Perrot's character and to progress she believed he made in rehabilitating himself since his release on

---

[4] Perrot pointed out that he started this consulting business while he was still incarcerated and had been performing these services for two years before his release on parole.

parole. She stated that he had been diligently participating in programming, "has *never used* . . . alcohol . . . [,] is drug-free, healthy, and [has been] employed" at a trailer park "with the same employer for the last 15 months."

K.W. stated that Perrot was diagnosed as autistic as a child; that people with autism "struggle to process official and unofficial sets of rules"; that his reentry plan upon being paroled never took into account this neurological disability; and that, rather than revoke his parole, "[t]he solution is simply to educate CDCR staff on neurological disorders and to provide more meaningful therapy" addressing his needs. K.W. expressed the view that Perrot's "stability is in jeopardy, as is the network of positive relationships he has built . . . ." In her view, "[r]evoking [his] parole would negatively affect the community" in which he "works and lives."

After considering all the evidence, Judge Neel found that Perrot (1) violated the computer access and use condition by using multiple unauthorized computers and digital memory devices and doing so in a manner that exceeded the scope of the April 14, 2023 Order; (2) violated the association with sex offenders condition by operating a business that assists SVP detainees, who are by definition known sex offenders; and (3) violated the sexually stimulating devices condition by possessing a penis pump and having access to a dildo.

Judge Neel revoked Perrot's parole and ordered a 60-day jail term, followed by reinstatement to parole under the same parole conditions. With credit for time served and conduct credits, Perrot's actual time served following the revocation was three days. After serving this brief jail term and being reinstated to parole—his parole as reinstated is apparently due to expire in October 2025—Perrot filed this timely appeal. By this appeal, Perrot reasserts his overbreadth challenge to the computer access and use

11

condition, adds overbreadth challenges to the sex offender association and sexually stimulating devices conditions, and argues vagueness as well as overbreadth against all of the targeted conditions.[5]

## II. DISCUSSION

"Parolees have fewer constitutional rights than do ordinary persons. [Citation.] 'Although a parolee is no longer confined in prison[,] his custody status is one which requires and permits supervision and surveillance under restrictions which may not be imposed on members of the public generally.' " (*In re Stevens* (2004) 119 Cal.App.4th 1228, 1233 (*Stevens*).) Although "[t]he state may impose any condition reasonably related to parole supervision" (*ibid.*; Pen. Code, § 3053, subd. (a)), there are constitutional limits upon the parole authority's imposition of restrictions. (*Stevens*, at pp. 1233–1234.)

Under *In re Sheena K.* (2007) 40 Cal.4th 875 (*Sheena K.*), for example, a probation condition may be challenged on appeal for unconstitutional vagueness (*People v. Hall* (2017) 2 Cal.5th 494, 501 (*Hall*)) or overbreadth (*People v. Salvador* (2022) 83 Cal.App.5th 57, 62–63 (*Salvador*)). "The criteria for assessing the constitutionality of conditions of probation [under *Sheena K.*] also applies to conditions of parole." (*Stevens*, *supra*, 119 Cal.App.4th at p. 1233; see *People v. Brand* (2021) 59 Cal.App.5th 861, 866.)

Vagueness challenges under *Sheena K.* "derive[] from the due process concept of fair warning" and "bar[] the government from enforcing a provision

---

[5] In his reply brief, Perrot for the first time argues that Judge Neel erred in finding that he violated the conditions of his parole and in revoking his parole. This argument appears to be a reformulation of his constitutional attacks on SCOP 53, 17 and 31 on vagueness and overbreadth grounds, and in any event adds nothing substantively to his constitutional arguments. It is, in effect, a request for a specific remedy (vacatur of the order revoking parole) and has been forfeited for failure to raise it in the opening brief.

that 'forbids or requires the doing of an act in terms so vague' that people of 'common intelligence must necessarily guess at its meaning and differ as to its application.' " (*Hall, supra,* 2 Cal.5th at p. 500.)  But these vagueness challenges are not abstract tests of wording precision.  The condition under attack should be given the meaning that would appear to a reasonable, objective reader when its words are read in context.  (*People v. Olguin* (2008) 45 Cal.4th 375, 382; *People v. Bravo* (1987) 43 Cal.3d 600, 606.)

In evaluating vagueness, only reasonable specificity is required. (*People v. Forrest* (2015) 237 Cal.App.4th 1074, 1080.)  " '[W]e rely on "context and common sense." ' " (*People v. Rhinehart* (2018) 20 Cal.App.5th 1123, 1129.)  A condition is not unconstitutionally vague " ' " 'if any reasonable and practical construction can be given to its language.' " ' " (*Hall, supra,* 2 Cal.5th at p. 501; *Rhinehart,* at p. 1129.)  To be upheld, a challenged condition need only be " 'sufficiently precise for the [supervised person] to know what is required of him, and for the court to determine whether the condition has been violated,' . . . ." (*Sheena K., supra,* 40 Cal.4th at p. 890.)

*Sheena K.* overbreadth challenges, which often arise in tandem with vagueness challenges (e.g., *People v. Appleton* (2016) 245 Cal.App.4th 717, 719, 724–728), have a somewhat different focus.  "A restriction is unconstitutionally overbroad . . . if it (1) 'impinge[s] on constitutional rights,' and (2) is not 'tailored carefully and reasonably related to the compelling state interest in reformation and rehabilitation.' [Citations.]  The essential question in an overbreadth challenge is the closeness of the fit between the legitimate purpose of the restriction and the burden it imposes on the defendant's constitutional rights—bearing in mind, of course, that perfection in such matters is impossible, and that practical necessity will justify some infringement." (*In re E.O.* (2010) 188 Cal.App.4th 1149, 1153.)

13

The paradigm overbreadth case involves First Amendment rights (see *People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1113–1115), but other kinds of constitutional rights may trigger overbreadth concerns as well.  In this case, for example, Perrot invokes not only his First Amendment rights, but his constitutionally protected rights to privacy (see *Lawrence v. Texas* (2003) 539 U.S. 558, 578), to associate with others (see *Arciniega v. Freeman* (1971) 404 U.S. 4, 4–5 (*Arciniega*)), and to pursue a chosen occupation (see *Bautista v. Jones* (1944) 25 Cal.2d 746, 749 (*Bautista*)).

Our standard of review in evaluating *Sheena K.* vagueness and overbreadth challenges is de novo.  (*Salvador*, *supra*, 83 Cal.App.5th at p. 63.)

## A. *Vagueness*

Perrot argues the computer access and use condition is unconstitutionally vague because the broad restriction it places on his "access" to computer devices is so indefinite that he might violate it just by being in the presence of a computer device, whether he is aware of his "access" or not.  This line of argument is foreclosed by our Supreme Court's decision in *Hall*.

Under *Hall*, we interpret the computer access and use condition to apply only to a scenario in which Perrot knows he has access to computer devices.  (*Hall*, *supra*, 2 Cal.5th at pp. 501–502.)  Tellingly, Perrot's defense here was not that he was unaware he had access to the many devices found in his residence, but that he thought he had permission to have them.  The plain language of SCOP 53—even in the temporary period when it was relaxed to give him access to the designated laptop, and even as modified by the CDCR's Office of Grievances—refutes his claimed understanding.

Perrot also argues the association with sex offenders condition is vague because the term "association" is so general that it could encompass a wide

range of interactions, including face-to-face contact and phone contact, as well as contact through third parties. In support of this argument, he relies on *Arciniega*, *supra*, 404 U.S. 4, where the revocation of a federal prisoner's parole had been upheld by a lower court "on the sole ground that [he] worked at a restaurant-nightclub that employed other ex-convicts." (*Id*. at p. 4.) Reversing, the United States Supreme Court held, "We do not believe that the parole condition restricting association was intended to apply to incidental contacts between ex-convicts in the course of work on a legitimate job for a common employer." (*Ibid*.)

Under *Hall*, our construction of parole terms claimed to be vague may "consider other sources of applicable law [citation], including judicial construction of similar provisions." (*Hall*, *supra*, 2 Cal.5th at p. 500, citing *In re Ana C.* (2016) 2 Cal.App.5th 333, 344, disapproved on other grounds, *Hall*, at p. 503, fn. 2.) In *United States v. Loy* (3d Cir. 2001) 237 F.3d 251 (*Loy*), the Third Circuit Court of Appeals addressed a condition of supervised release barring a defendant who had been convicted of possession of child pornography from having unsupervised contact with minors. According to the *Loy* panel, "This argument is one that has a long and familiar history in the courts; associational conditions placed upon parolees and probationers are commonplace and have frequently been challenged as overly broad or vague because they potentially extend to casual encounters." (*Id*. at pp. 268–269.)

Citing *Arciniega*, subsequent federal circuit authority, and a treatise on probation and parole, the *Loy* panel explained nearly 25 years ago, "At this point, it is well established that associational conditions do not extend to casual or chance meetings." (*Loy*, *supra*, 237 F.3d at p. 269.) The court rejected defendant Loy's challenge because the condition there would not

15

apply to chance encounters. (*Ibid.*) We reject Perrot's vagueness challenge to the association with sex offenders condition for the same reason. Here, there was nothing "incidental" about Perrot's association with SVP's (*Arciniega*, *supra*, 404 U.S. at p. 4), and the phone calls Perrot admitted receiving did not occur by "chance" (*Loy*, at p. 269). Rather, they were the result of his deliberate actions, which in effect invited such contact.

We do not have a situation in which Perrot elected to use his paralegal skills for a wide range of defendants, a few of whom happened to be sex offenders. Had that been the case, he might not have known in advance whether he would be working for a sex offender when he undertook a given assignment. Nor do we have a situation in which, in the vetting process for Perrot's prospective employment—a vetting process Perrot obstructed by failing to tell his parole agent about his consulting business—the employer was specifically advised that under no circumstances were any SVP clients to know that Perrot was working on their cases or to be given his contact information.

Since the objective of Perrot's business was to work on SVP cases and there were no precautions taken to ensure that SVP clients would not try to contact him, it seems to us foreseeable that some of the SVP clients on his cases might call him directly. Which is, in fact, what happened—more than once. Our practical construction of the term "associate," in these specific circumstances, is that it gave Perrot adequate notice he would violate SCOP 17 by accepting work on SVP cases, communicating with SVP clients who called, and thereby putting himself in this position.

Perrot's vagueness challenge to the sexually stimulating devices condition rests primarily on *People v. Turner* (2007) 155 Cal.App.4th 1432 (*Turner*), which predated the Supreme Court's decision in *Hall* by a decade.

16

The appellant there had been convicted of felony indecent exposure in a case where the victim was a three-year-old child. (*Turner*, at p. 1434.) He had a prior conviction for indecent exposure to children and two prior federal convictions for receiving child pornography. (*Ibid.*) On appeal, he challenged a probation condition barring him from possessing " 'any sexually stimulating/oriented material deemed inappropriate by the probation officer and/or patroniz[ing] any places where such material or entertainment is available.' " (*Ibid.*)

The challenged probation condition in *Turner* gave open-ended discretion to a probation officer to decide after the fact what " 'sexually stimulating/oriented material' " was " 'deemed inappropriate.' " (*Turner*, *supra*, 155 Cal.App.4th at p. 1434.) Finding that to be an "inherently imprecise and subjective" standard, the panel modified the challenged condition to require the probation officer to advise the probationer in advance what " 'sexually stimulating/oriented material' " was inappropriate, and to provide that the probationer was only barred from patronizing places where such material or entertainment was known to be available. (*Id.* at p. 1436.) Perrot's case does not present any such open-ended official discretion.

As noted above, *Hall* now teaches that a probation or parole condition "should not be invalidated as unconstitutionally vague ' " 'if any reasonable and practical construction can be given to its language.' " ' " (*Hall*, *supra*, 2 Cal.5th at p. 501.) Perrot admits that "the purpose of the penis pump was to achieve an erection, so . . . there was no vagueness problem in determining whether the object was 'sexually-stimulating.' " And with respect to the dildo, his defense is that K.W. owned the object, not that there is some lack of clarity about whether it qualifies as a sexually stimulating device. Since, on

this record, Perrot himself understood the objects at issue to fall within the terms of the challenged condition, we reject his vagueness argument.

**B.** *Overbreadth*

### 1. Right to Free Speech

Parole conditions restricting the parolee's access to Internet-enabled computers will survive a First Amendment overbreadth challenge if they are narrowly tailored to further a compelling state interest, such as protecting children from sex crimes. (*People v. Harrisson* (2005) 134 Cal.App.4th 637, 647 (*Harrisson*); *People v. Pirali* (2013) 217 Cal.App.4th 1341, 1349–1350 (*Pirali*); see *Shoemaker v. Harris* (2013) 214 Cal.App.4th 1210, 1230 [observing the state's interest in " ' "safeguarding the physical and psychological well-being of a minor" ' " is "compelling"]; *In re Alva* (2004) 33 Cal.4th 254, 279, fn. 12 [noting Legislature's finding that protecting the public from sex offenders is " 'a paramount public interest' "].) The computer access and use condition passes First Amendment muster under this standard.

Perrot complains that this condition subjects him to "blanket restrictions on computer and internet use[]." But that complaint is overstated. The computer access and use restriction does not place a flat-out ban on every aspect of his participation in the digital world. In November 2022, the CDCR Office of Grievances modified the original language of SCOP 53, relaxing it just enough so that he could use a county law library computer to work as a paralegal and pursue his own habeas proceedings. And at the time Agent McCovey searched Perrot's residence, the April 14, 2023 Order had loosened SCOP 53 further, allowing Perrot to use a designated computer at home for the limited purpose of conducting legal research to support his pending habeas petition. As we read the record, therefore, to the extent Perrot can show that he needs access to computer devices and the Internet

18

for the minimum needs of life and work, he knows how to ask for modifications designed to allow him to do that, and when he has made such requests, he has been given a limited dispensation appropriate to his demonstrated need.

Perrot appears to believe he should be free to roam the Internet just like anyone else because numerous other conditions of his parole give the state many other ways to monitor his behavior. We disagree. Narrow tailoring must take into account not only the level of the danger presented by the supervised individual, but the limited options available to ensure compliance given that individual's demonstrated willingness to comply. Willingness to comply is necessarily relevant because any inquiry into less intrusive alternatives looks to what alternatives are realistically available. For a parolee with Perrot's extensive criminal record of sex offenses against children, and especially in light of his history as a scofflaw while in prison and on parole, severe limitations on his ability to use digital devices are fully justified. This is someone the CDCR could reasonably conclude cannot be trusted to obey subject matter boundaries set for him while using the Internet. Tightly restricting the devices Perrot may use by limiting him to a single device to be used for a limited purpose, at limited times of day, in a public place where he is unlikely to attempt to take advantage of victims, is a reasonable form of narrow tailoring on this record.

We find *Harrisson*, *supra*, 134 Cal.App.4th at pp. 641–642, 647, and *Pirali*, *supra*, 217 Cal.App.4th at p. 1349, to be on point here. In *Harrisson*, a Third District appellate panel upheld a condition barring a probationer convicted of possessing child pornography from accessing the Internet or possessing any device that could access the Internet. (*Harrisson*, *supra*, 134 Cal.App.4th at pp. 639–640.) The court recognized the "ubiquity of the

19

Internet and its power as a tool of commerce, information, and entertainment," but upheld the condition because "when such a beneficial tool is put to evil use, there is no constitutional impediment to restrictions calculated to forestall a recurrence." (*Id*. at p. 647.) Likewise, in *Pirali*, a Sixth District panel upheld against an overbreadth challenge a condition barring a probationer convicted of possessing child pornography from accessing the Internet without his probation officer's prior approval. (*Pirali, supra*, 217 Cal.App.4th at pp. 1344, 1349–1350.)

Portraying *Harrisson* and *Pirali* as out of step with more recent case law disapproving conditions of supervision that restrict the ability of probationers and parolees to use the Internet, Perrot contends we should instead follow *Salvador, supra*, 83 Cal.App.5th 57, a subsequent Sixth District case in which the appellant, who pled no contest to felony false imprisonment and misdemeanor sexual battery, challenged probation conditions restricting his use of social media and the Internet, and won a partial victory on appeal. (*Id*. at p. 59.)

There are two relevant aspects to the overbreadth holding in *Salvador*. The court follows *Pirali* in upholding a ban on entering or posting to social media sites without probation officer approval (*Salvador, supra*, 83 Cal.App.5th at p. 66), but goes on to invalidate a flat ban on Internet access absent probation officer approval. (*Id*. at pp. 66–67.) "The general restriction against Internet access . . . sweeps far more broadly than necessary to serve the purposes of the condition—preventing or deterring contact with minors for sexual purposes," the court concludes. (*Id*. at p. 67.) Since SCOP 53—which reads, "You shall not have access to or use a personal computer, electronic communication device, and peripheral devices," at least as originally imposed—is similarly broad and categorical, it is this aspect of

20

the overbreadth holding in *Salvador* that Perrot urges us to apply.  We decline to do so.

Some background context on the evolution of the case law is helpful here.  In the intervening years between *Pirali*, which was decided in 2013, and *Salvador*, which was decided in 2022, "the Internet [became] even more central and commonplace in the lives of ordinary people; it is now practically unavoidable in daily life." (*Salvador, supr*a, 83 Cal.App.5th at p. 67.)  "No valid purpose is served," the *Salvador* court explains, "by preventing Salvador from engaging in the kinds of Internet access that have become common and ubiquitous—e.g., performing work-related tasks, accessing or commenting on news sites, or conducting commercial or business transactions in ways that require engaging in protected speech." (*Ibid*.)  *Salvador* backs away from *Pirali*'s affirmance of an Internet ban with a carveout for probation officer approval. (*Id*. at pp. 66–67.)  While the *Pirali* court found it was enough to save a prohibition on Internet access where there was an exception for such approval, the *Salvador* court did not. (*Id*. at p. 67.)

Here, a fresh perspective *Salvador* brings to the case law is the court's use of an analogy comparing blanket restrictions on Internet access to disfavored prior restraints in First Amendment law. (*Salvador, supr*a, 83 Cal.App.5th at p. 66.)  This rationale builds on the idea that Internet use is ubiquitous in modern life—an indisputable point mentioned in *Salvador*, *Pirali* and *Harrisson*—which in turn comes from *Stevens*, *supra*, 119 Cal.App.4th 1228, one of the first California cases to address free speech issues raised by restrictions on the freedom of a parolee or probationer to use the Internet. (*See id*. at pp. 1234–1239.)  "In appropriate cases," the *Stevens* court pointed out, "access to the Internet assists parolees to become law-abiding citizens." (*Id*. at p. 1240.)  Because the underlying crime in *Stevens*,

21

lewd conduct inflicted on a child, "did not involve a computer" (*id*. at p. 1231), the appellant brought a challenge to a parole condition that barred him from " 'possess[ing] or hav[ing] access to computer hardware or software including the internet' " (*ibid*.). Grounding its analysis on infringement of the appellant's free speech rights, the *Stevens c*ourt held that this "broad prohibition on use of the computer and Internet bore no relation to Stevens's conviction for child molestation and imposed a greater restriction of his rights than was reasonably necessary to accomplish the state's legitimate goal." *(Id*. at p. 1239.)[6]

*Salvador* extends the reasoning in *Stevens* on a record where, as we have here, there was an established nexus between the appellant's use of a computer device and the commitment offenses. (See *Salvador, supr*a, 83 Cal.App.5th at p. 65 ["Because Salvador used social media to text with the victims, the nexus to this condition, while attenuated, is sufficiently established such that imposition of the condition is not an abuse of discretion . . . ."].) But in striking down as equivalent to a prior restraint a

---

[6] In arriving at this conclusion, *Stevens* canvassed extant federal authority as of the early 2000s, found some cases affirming conditions of probation and parole that restrict computer use and Internet access where the use of a computer is reasonably related to the underlying crime (see *United States v. Paul* (5th Cir. 2001) 274 F.3d 155; *United States v. Rearden* (9th Cir. 2003) 349 F.3d 608; *United States v. Crandon* (3d Cir. 1999) 173 F.3d 122); found other, more speech-protective cases reversing such conditions, in some instances reflecting a "policy of wide-open access to the Internet regardless of whether a computer was used for the underlying crime" (*Stevens*, *supra*, 119 Cal.App.4th at p. 1237; see *United States v. Freeman* (3d Cir. 2003) 316 F.3d 386; *United States  v. Peterson* (2d Cir. 2001) 248 F.3d 79; *United States v. Sofsky* (2d Cir. 2002) 287 F.3d 122 (*Sofsky*); *United States v. White* (10th Cir. 2001) 244 F.3d 1199); and opted to follow the more speech-protective cases. (*Stevens*, at p. 1239.)

broad ban on Internet access subject only to an exception for probation officer approval, the *Salvador* court lays down an important caveat: "With respect to some offenses," the court points out—citing as examples "possession or distribution of child pornography"—"such a burdensome condition might be justified or necessary." (*Salvador, supra*, 83 Cal.App.5th at p. 67.)

*Salvador*'s concluding caveat applies to Perrot's case. In an effort to persuade us to the contrary, Perrot attempts to limit the illustrative exception recognized by *Salvador* to the crimes at issue in *Pirali* and *Harrisson*—possession and distribution of child pornography. He concedes that a jury found him guilty of distribution of lewd materials to a minor (Pen. Code, § 288.2), but he contends that that was only a misdemeanor offense, and to return a guilty verdict on it, the jury was not required to find that he showed his minor victim child pornography, as distinguished from adult pornography. This distinction matters, Perrot contends, because "the perpetuation and distribution of child pornography is so specifically and intrinsically related to the instrumentality of the Internet . . . ."

We reject the argument as specious. Putting aside the fact we are not dealing with a "blanket prohibition," Perrot was found guilty of a series of felonies committed against child victims in addition to his misdemeanor conviction for distribution of lewd material to a minor. Judge Kreis's determination that Perrot was convicted of "us[ing] a computer and child pornography to aid his" Penal Code section 288.2 offense supplies the requisite computer-use nexus to criminal activity, regardless of the type of pornography involved. The distinction Perrot attempts to draw between different genres of pornography is strained at best. We do not accept that the use of a computer to show a minor adult pornography for prurient purposes is significantly less serious or less abusive of digital technology than is the use

23

of a computer to show a minor child pornography for the same purposes.[7] Perrot's long list of other sex crimes against minors serves to heighten the seriousness of the harm he could inflict if he were to reoffend. In their totality, his crimes are far more dangerous to children than the offenses in *Pirali* and *Harrisson*.

In the end, the closeness of fit analysis in First Amendment overbreadth law requires us to strike a balance between competing considerations when we decide whether any misalignment between means and ends is constitutionally permissible. On this record, those considerations are as follows. On the one hand, Perrot's record of prior convictions for sex offenses against children is horrific; he has used a computer before in the commission of at least one of these offenses; he has a postrelease record of noncooperation and noncompliance with rules; and the CDCR rates his risk of reoffense in the high range. On the other hand, even as a high-risk parolee who continues to pose a serious danger to children, Perrot still has free speech rights that must be accommodated insofar as possible to facilitate his reentry into society. He has emphasized that using a computer for remote paralegal work is essential to his effort to optimize his employability. And his First Amendment interest more generally, as captured with a flourish in a quote from Gilbert & Sullivan at the end of the *Stevens* opinion—"a felon's 'capacity for innocent enjoyment is just as great as any honest man's' " (*Stevens*, *supra*, 119 Cal.App.4th at p. 1240)—deserves to be weighed in the balance as well.

---

[7] We deny on relevance grounds Perrot's request that we take judicial notice of certain witness testimony in his 2004 trial he claims would show there was no evidence he displayed child pornography to the victim of his Penal Code section 288.2 offense.

24

We see this balance tipping sharply in favor of the Attorney General on the facts presented, and as a result, we reject Perrot's contention that SCOP 53 is constitutionally overbroad. The record in this case establishes a compelling state interest—the need to ensure that Perrot does not reoffend by committing sex crimes against children while on parole. We understand he would prefer that other, less speech restrictive means be used to achieve this end, but that experiment has been tried, and it failed. His failure to abide by the temporary designated computer arrangement put in place by Judge Kreis during the pendency of the habeas proceedings simply confirms that SCOP 53, as modified by the Office of Grievances, is as narrowly tailored as it can be, given the range of alternatives realistically available to the state.

### 2. Right to Work

Citing the overbreadth analysis in *Salvador*, Perrot contends his paralegal consulting work for public defenders on SVP cases implicates his constitutionally protected right to work (*Bautista*, *supra*, 25 Cal.2d at p. 749), and that the association with sex offenders condition is overbroad because it unnecessarily burdens that right. He quotes the California Supreme Court's holding in *Purdy & Fitzpatrick v. State* (1969) 71 Cal.2d 566 (*Purdy*) that "the state may not arbitrarily foreclose to any person the right to pursue an otherwise lawful occupation." (*Id.* at p. 579.)

In support of this argument, Perrot claims that, in his case, "[t]he nature of [his] consulting work for public defenders representing defendants in SVPA proceedings did not implicate the concerns" Agent McCovey referenced "in describing the . . . procedures a parole agent would [undertake] regarding the employment of a parolee required to register as a sex offender under [Penal Code] section 290." "None of these concerns were implicated," he argues, because "[t]he public defenders for whom [Perrot] worked were

25

already fully aware of [his] criminal history," and the remote nature of the work would not bring him into contact with children.

*Purdy* is inapposite. The statute at issue there imposed a blanket ban on the employment of aliens on public works projects. (*Purdy*, *supra*, 71 Cal.2d at p. 568.) The court invalidated the statute on, among other bases, equal protection grounds. (*Id.* at p. 569.) Citing *Yick Wo v. Hopkins* (1886) 118 U.S. 356, and the heightened scrutiny given to discrimination against " 'discrete and insular minorities' " (*Purdy*, at p. 579, quoting *United States v. Carolene Products Co.* (1938) 304 U.S. 144, 153 & fn. 4), the court struck down the challenged statute on the grounds that it discriminated against aliens and failed the test of strict scrutiny. (*Purdy*, at p. 585.)

Sex offender parolees are not a protected group for purposes of equal protection analysis under *Purdy*, and to the extent any fundamental right to work in a chosen occupation under *Bautista* is implicated here, we agree with the Attorney General that the association with sex offenders condition is no broader than is necessary to prevent Perrot from networking with other sex offenders, a class of people who may be a potential source for him to obtain access to young girls on whom he might prey again.

### 3. Right to Privacy

Perrot understands the thrust of SCOP 31 is to "restrict[] a parolee's viewing of pornographic material through both traditional instrumentalities (magazines, books, projected films) and through 'electronic communication devices,' " and he concedes that objective is "constitutionally-permissible to the extent that pornography per se is not protected by the First Amendment." Notwithstanding this constitutionally permissible goal, Perrot claims that, because the sexually stimulating devices condition prohibits him from using "objects or devices involved in private sexual activity," SCOP 31

26

unnecessarily burdens fundamental privacy rights recognized by the United States Supreme Court in *Lawrence v. Texas, supra,* 539 U.S. 558.

We reject the argument. Perrot does not claim, and at this stage cannot claim, that any of his underlying criminal conduct was constitutionally protected, as was the case in *Lawrence.* It does not unduly burden the privacy rights of a validly convicted child rapist to impose upon him, as a condition of parole, a ban on the possession of, access to, or use of devices that are designed to facilitate sexually stimulating acts carried out by penetration. We are satisfied that SCOP 31, to the extent it is challenged here for unnecessarily treading on privacy rights, passes the test of narrow tailoring.

## III. DISPOSITION

The order revoking Perrot's parole is affirmed.

STREETER, J.

WE CONCUR:

BROWN, P. J.
GOLDMAN, J.

27

Trial Court:      Superior Court of California, County of Humboldt

Trial Judge:     Hon. Kelly L. Neel

Counsel:        David A. Kaiser, under appointment by the Court of Appeal, for Defendant and Appellant.

                    Rob Bonta, Attorney General, Sara J. Romano, Senior Assistant Attorney General, Amanda J. Murray, Supervising Deputy Attorney General, and Rachael A. Campbell, Deputy Attorney General, for Plaintiff and Respondent.