Filed 5/14/25  In re Lopez CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re MATTHEW CHARLES LOPEZ<br><br>on Habeas Corpus. | E084939<br><br>(Super.Ct.No. CVRI2402796)<br><br>OPINION |

ORIGINAL PROCEEDINGS; petition for writ of habeas corpus.  Timothy J. Hollenhorst, Judge.  Petition granted.

Law Office of Janice M. Bellucci and Janice M. Bellucci for Petitioner.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Sara J. Romano, Assistant Attorney General, Amanda J. Murray and John P. Walters, Deputy Attorneys General, for Respondent.

In this habeas corpus proceeding, Matthew Charles Lopez challenges the constitutionality of a special condition of parole prohibiting him from having any contact with his minor daughter.  We conclude that the condition is unconstitutionally overbroad and therefore grant the petition.

1

BACKGROUND

In 2010, Lopez was convicted by plea of one count of committing lewd and lascivious acts on a child under the age of 14 years. (Pen. Code, § 288, subd. (a).) The victim was Lopez's four-year-old stepdaughter, who reported that Lopez placed his penis on her vagina and made her orally copulate him when he babysat her while her mother was working. Lopez was sentenced to eight years in state prison. He was released in August 2017 and ordered to serve a maximum term of 10 years on parole. Lopez's original parole terms included a condition that prohibited him from having any contact with any minor female (special condition no. 8).

Lopez was released on parole in August 2017. He married Inez Lopez, and she gave birth to their daughter Sofia L. nearly one year after he was released.[1] Lopez disclosed Inez's pregnancy to his parole officer, and after Sofia was born his parole conditions were modified at his request to allow him to live with Sofia. The conditions were modified to include now-former special condition no. 67, which provided: "You shall not have unsupervised contact with your biological daughter, Sofia L. You shall make sure an adult family member is available [to] supervise contact at all times. Family

---

[1]    In his verified habeas petition, Lopez states that he met and married Inez after he was released from custody. But a 2020 report from the Division of Adult Parole Operations (the parole division) of the Department of Corrections and Rehabilitation (the Department) states that Lopez married before he was released from custody.

2

members authorized to supervise contact are: Ynez Lopez (spouse/Sofia's mother), Steven Lopez (father), Rosemary Lopez (mother), and Steven Lopez Jr. (brother)."[2]

The parole division conducted its first discharge review of Lopez in August 2020, with annual reviews conducted thereafter.[3] (Cal. Code Regs., tit. 15, §§ 3720, subd. (a)(2), 3722, subd. (b); unlabeled references to administrative regulations are to Title 15 of the California Code of Regulations.) In connection with each review, the parole division authored a discharge review report memorializing the review and containing recommendations from the parole officer who authored the report, a unit supervisor, and a parole administrator.

In August 2020, Lopez and his family—his wife, brother, mother, and father—all signed a general affidavit acknowledging that they would ensure that Lopez was not left alone with Sofia. In that month's discharge review report, the parole officer, a unit supervisor, and a parole administrator agreed that Lopez should be retained on parole. The parole officer reported that Lopez was employed full time as a butcher, was also a part-time student, and was living with his wife and two-year-old daughter at his parents'

---

[2]   The earliest copy of Lopez's conditions of parole contained in the exhibits supporting the habeas petition is from 2020. It contains now-former special condition no. 67. Lopez verified that the contents of the habeas petition are correct, and in the petition he states that now-former special condition no. 67 was imposed after Sofia was born in 2018.

[3]   "Discharge Review means a review of a supervised person's criminal history, and their adjustment and/or performance while under parole supervision for the purpose of rendering a decision as to whether or not a supervised person should be retained on parole supervision for another year or be discharged from parole supervision altogether." (Cal. Code Regs., tit. 15, § 3720, subd. (a)(2).)

house.  Lopez had no parole violations, was attending sex offender treatment, and was in "good standing" with the sex offender treatment provider.  The parole officer noted that it was "[o]f concern" that Lopez had a two-year-old biological daughter with whom he was living, and the officer recommended that the family would "greatly benefit" from Lopez's continued participation in sex offender treatment and retention on parole.  The unit supervisor, while acknowledging that Lopez had made "positive strides in adjusting in the community," recommended that continued supervision on parole was warranted for the protection of the community and in order for Lopez to continue in sex offender treatment to address factors that led him to molest his stepdaughter.  The parole administrator likewise acknowledged Lopez's positive progress but recommended retention on parole to monitor his family dynamics and to ensure his continued participation in sex offender treatment, given that he had "a young daughter who is approaching the age of the victim," which the administrator found to be "of great concern."

In the discharge review reports in 2021 and 2022, the parole officer reported that Lopez's living situation remained the same, he was employed full time as a financial advisor and consultant, he did not violate any parole conditions, he "[a]ttended, participated, and/or completed sex offender treatment," and he was in compliance with the sex offender treatment provider.  In July 2021, the parole officer and a parole administrator again noted that Lopez's continued participation in sex offender treatment and retention on parole would benefit Lopez and his family because Lopez's daughter

4

was "the same age" that his stepdaughter was when he sexually abused her, which the parole officer found to be "[o]f concern."

In the August 2022 discharge review report, the parole officer reported that Lopez worked full time as a financial consultant for a company of which he was a minority owner. He worked "various hours remotely." When Lopez was not working, he spent his time at home "taking care of his daughter, assisting his parents and wife with house chores and cooking." Lopez also passed a polygraph test in April 2022. The parole officer noted that Lopez's overall performance on parole had been "excellent," but the officer nevertheless was concerned that Lopez's daughter was "the same age as his 4-year-old step-daughter victim." Taking all circumstances into consideration, the parole officer recommended that Lopez remain on parole with continued sex offender treatment. The unit supervisor disagreed and instead recommended that Lopez be discharged from parole. The unit supervisor acknowledged the parole officer's concern about Lopez living with his daughter but remarked that "it has not been a large enough concern to recommend a special condition of parole to restrict contact with her." The parole administrator disagreed with the unit supervisor and recommended that Lopez be retained on parole based on guidelines pertaining to sex offenders, which required a parolee to complete 78 months of parole out of a 10-year period before discharge should be recommended. The August 2022 discharge review report was signed by the parole officer, the unit supervisor, and the parole administrator within one week after Sofia turned four years old.

In the August 2023 discharge review report, the parole officer reported that Lopez's living and employment situations remained the same. Lopez was in compliance with his sex offender treatment and had "titrated into maintenance phase." He passed another polygraph test in February 2023. The parole officer observed that Lopez had no parole violations during the period and had satisfactory attendance with the sex offender treatment provider, and his performance on parole had "been positive." The parole officer did not note any concerns with Lopez's living situation but recommended that Lopez remain on parole because he was ineligible for early discharge consideration. The unit supervisor similarly recommended that Lopez remain on parole because he was not eligible for early discharge and also because Lopez continued to rely on his parents for support, and his commitment offense was very serious in that "he took advantage of the innocence of a young minor member of society, *victimizing that innocence*." The parole administrator also noted that Lopez was not eligible for early discharge and therefore should remain on parole. The parole administrator commented: "Additionally, [Lopez's] conditions are being amended to reflect no contact with biological children, as his offense was committed against his step daughter while he was a father figure. Additional supervision is in the best interest of the community."

In August 2023, special condition no. 9 was added to Lopez's parole terms. It provides: "You shall not have contact with your biological or adopted children. 'No contact' means no contact in any form, whether direct or indirect, personally, by telephone, in writing through electronic media, email, computer, or through another

6

person, etc." A notice stating Lopez's updated conditions of parole includes an explanation for the special conditions. It describes the commitment offense, the sentence that Lopez received, and his criminal history, but it provides no other explanation of special condition no. 9.

Lopez learned of the new condition from his parole officer in late July 2023. The following month, Lopez submitted a grievance (Grievance No. 438374) to the Department, challenging the decision to revoke the previous parole condition that allowed him to have supervised contact with Sofia and replacing it with a condition that prohibited all contact with her. Lopez argued that not allowing him to have any contact with his daughter was overbroad, not narrowly tailored, and an infringement on his constitutional right to familial association as set forth in *United States v. Wolf Child* (9th Cir. 2012) 699 F.3d 1082 (*Wolf Child*), which concluded that a supervised release condition prohibiting a convicted sex offender from "'dat[ing] or socializ[ing] with anybody who has children under the age of 18'" without prior approval (*id.* at p. 1089) was an unconstitutionally overbroad infringement on the defendant's constitutional right to free association and, specifically, familial association (*id.* at pp. 1087-1088, 1100). Lopez asked to have former special condition no. 67 restored so that he could again live with Sofia with supervised contact.[4]

---

[4] A new, unrelated 67th condition was added to Lopez's parole conditions in 2023, so we refer to the condition that allowed Lopez to live with Sofia with supervised contact as former special condition no. 67.

7

In October 2023, the Department's Office of Grievances issued its decision on Grievance No. 438374 (the first grievance decision). It denied Lopez's challenge to special condition no. 9 and concluded that the condition would "remain imposed." The Office of Grievances reasoned: "You are currently on parole for PC 288 (a) L&L Child Under 14 Years. The circumstances of the offense were you sexually molested your 4-year-old step-daughter on multiple occasions. [¶] United States v. Wolfchild has clearly defined familial relationship as it applies to contact with biological children. Based upon the circumstances of your commitment offense, you have shown that no familial barriers exists and you took advantage of your position of trust as a parental figure. Based on the aforementioned, a nexus exists to impose [special condition no. 9]."

Lopez appealed that decision. In late December 2023, the Department's Office of Appeals issued its decision. The Office of Appeals granted Lopez's claim. The Office of Appeals did not have access to and had not been provided the 2023 discharge review report, but it noted that the 2022 discharge review report revealed that Lopez had continued to improve on parole and that he had maintained a stable living arrangement. The Office of Appeals reasoned that there was no evidence indicating that Lopez's "situation, including family structure, changed significantly from 2022, necessitating the additional parole condition." Citing *Wolf Child*, the Office of Appeals explained that "special conditions impacting a fundamental right must take into account an individualized assessment of [the parolee's] situation, including family structure, and must not be overly broad." The Office of Appeals concluded: The "Office of

8

Grievances' response does not provide sufficient information to establish staff followed provisions of case law and all applicable rules and regulations. Based on the preponderance of evidence available at time of review, Office of Grievances' decision is not proper."

As a remedy, the Office of Appeals ordered: The "Office of Grievances shall open a new offender grievance tracking log number, determine if the Department has jurisdiction and if so, consider all relevant documents, gather and preserve all relevant evidence, conduct necessary interviews, and answer this claim on the merits. Specifically, address whether Special Condition of Parole No. 09, 'You shall not have contact with your biological or adopted children. 'No contact' means contact in any form, whether direct or indirect, personally, by telephone, in writing through electronic media, email, computer, or through another person, etc,' imposed on August 8, 2023, infringes on [Lopez's] constitutional right to familial association and is overly broad pursuant to United States v. Wolf Child (9th Cir. 2012) and People v. Smith (2007)." In granting Lopez's claim, the Office of Appeals indicated that the "decision exhausts the administrative remedies available to the claimant within the CDCR."

In mid-February 2024, Lopez filed a form request to implement remedies for the first grievance decision with the Office of Appeals. The form specifies that it is to be used "to ask for a remedy that was granted but is overdue." (Italics omitted.) Lopez stated that he had "received no decision from the Office of Grievances, nor has any relevant person been contacted for the interview."

In April 2024, the Office of Grievances issued a new decision with a new tracking number—Grievance No. 545764—in which the Office of Grievances again denied the challenge and ordered special condition no. 9 to remain imposed (the second grievance decision). The Office of Grievances explained the reason for the denial as follows: "United States v. Wolf Child has clearly defined familial relationship as it applies to contact with biological children. Based upon the circumstances of your commitment offense, you have shown that no familial barriers exist and you took advantage of your position of trust as a parental figure. Given the nature of your commitment offense that involved sexual abuse of your stepdaughter with whom you were a father figure, prohibiting contact with your daughter regulates conduct that is not in itself criminal, but reasonably likely to increase the chance the offender will commit a new crime."

Lopez filed a petition for writ of habeas corpus in the superior court. In August 2024, the superior court denied the petition without holding an evidentiary hearing, finding that Lopez had failed to exhaust his administrative remedies by failing to appeal the second grievance decision.

The following month, the Office of Appeals responded to Lopez's February 2024 request to implement remedies in the first grievance decision. It stated: "The Office of Appeals received your Request to Implement Remedies (Form 602-3) regarding the above-referenced matter. Subsequent to your filing, this Office has confirmed that the remedy has been fully implemented. The matter is therefore fully resolved."

10

Lopez subsequently filed a petition for writ of habeas corpus with this court. We issued an order to show cause.

DISCUSSION

I. *Exhaustion of administrative remedies*

The Department argues that the habeas petition should be denied because Lopez failed to exhaust his administrative remedies by not appealing the second grievance decision. We are not persuaded.

Before seeking judicial relief, habeas corpus petitioners must exhaust all available administrative remedies, even if "constitutional issues are at the core of the dispute." (*In re Arias* (1986) 42 Cal.3d 667, 678, abrogated by statute on another ground as stated in *Thompson v. Department of Corrections* (2001) 25 Cal.4th 117, 130.) Exhaustion of administrative remedies "is a jurisdictional prerequisite to resort to the courts." (*Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 293.)

The Department has a multi-level administrative process for review of challenges to conditions of parole. (*In re Hudson* (2006) 143 Cal.App.4th 1, 6.) When Lopez filed his grievance and administrative appeal, the Department's regulations required Lopez to submit a written grievance to the Office of Grievances within 60 days of discovering the challenged parole condition.[5] (Former §§ 3481, subd. (a), 3482, subds. (a)(2), (b)(1).) The parolee could then file a written appeal within 60 days of the Office of Grievances'

---

[5] The pertinent Department regulations were amended effective January 1, 2025. (Cal. Reg. Notice Register 2025, No. 82.) We cite and quote the version of the regulations that was in effect in 2023, when Lopez filed his grievance and his appeal from the denial of his grievance was decided.

11

decision.  (Former §§ 3481, subd. (a), 3484, subds. (a), (b)(1).)  The Office of Appeals was required to issue a written decision within a specified period, and the regulations listed 10 permissible resolutions of each claim in the appeal, one of which was that the appeal was "'[g]ranted.'"  (Former § 3485, subd. (g)(2)(A).)  The regulations further provided that "[c]ompletion of the review process by the Office of Appeals resulting in a decision of . . . 'granted,' . . . constitutes exhaustion of all administrative remedies available to a claimant within the department."  (Former § 3485, subd. (*l*)(1).)

Under the then-existing regulations, Lopez exhausted his administrative remedies with respect to the first grievance decision denying his challenge to the imposition of special condition no. 9 and the revocation of former special condition no. 67.  It is undisputed that Lopez filed a timely administrative appeal of the first grievance decision and that the Office of Appeals "granted" that appeal.  That appeal was decided in 2023, when the regulations provided that the granting of an appeal exhausts a claimant's administrative remedies.  (Former § 3485, subd. (*l*)(1).)  Accordingly, the Office of Appeals correctly stated in its decision that Lopez exhausted his administrative remedies within the Department.

Contrary to the Department's argument, Lopez was not required to appeal from the second grievance decision in order to exhaust his administrative remedies.  Lopez did not file a second grievance that independently required exhaustion.  Rather, the Office of Appeals required the Office of Grievances to "open a new offender grievance tracking log number" to reconsider Lopez's challenge to the constitutionality of special condition

12

no. 9, which the Office of Grievances did. The second grievance decision therefore was merely a continuation of the only grievance that Lopez filed, which was exhausted when the Office of Appeals granted the appeal. (Former § 3485, subd. (*l*)(1).) The applicable regulations did not require Lopez to take any further action, so Lopez exhausted his administrative remedies when the Office of Appeals granted the appeal. (*Ibid.*)

For these reasons, we conclude that under then-applicable regulations Lopez exhausted his administrative remedies with respect to the grievance that he filed challenging the constitutionality of special condition no. 9.

II.      *Constitutionality of the parole condition*

Lopez argues that special condition no. 9 is unconstitutional because it was arbitrarily imposed and infringes on his right to familial autonomy because it is not narrowly tailored. We agree that special condition no. 9 is unconstitutionally overbroad.

"'Parole is the conditional release of a prisoner who has already served part of his or her state prison sentence. Once released from confinement, a prisoner on parole is not free from legal restraint, but is constructively a prisoner in the legal custody of state prison authorities until officially discharged from parole.'" (*In re Taylor* (2015) 60 Cal.4th 1019, 1037.) Parolees "have fewer constitutional rights than do ordinary persons." (*In re Stevens* (2004) 119 Cal.App.4th 1228, 1233 (*Stevens*); *Taylor*, at pp. 1036-1037.) But there are still "constitutional limits upon the parole authority's imposition of restrictions." (*People v. Perrot* (2024) 107 Cal.App.5th 795, 806.)

In general, the state may impose any parole condition that it deems proper (Pen. Code, § 3053, subd. (a)), but the conditions "must be reasonable since parolees retain 'constitutional protection against arbitrary [and] oppressive official action'" (*Stevens*, *supra*, 119 Cal.App.4th at p. 1234). "Conditions of parole must be reasonably related to the compelling state interest of fostering a law-abiding lifestyle in the parolee. [Citation.] Thus, a condition that bars lawful activity will be upheld only if the prohibited conduct either 1) has a relationship to the crime of which the offender was convicted, or 2) is reasonably related to deter future criminality." (*Ibid.*)

In addition, parole conditions may not be unconstitutionally vague or overbroad. (*People v. Austin* (2019) 35 Cal.App.5th 778, 787.) A parole condition restricting a parolee's exercise of a constitutional right must not be overbroad and will be upheld "only if narrowly drawn to serve the important interests of public safety and rehabilitation, *and* if [it is] 'specifically tailored to the individual [parolee].'" (*People v. Smith* (2007) 152 Cal.App.4th 1245, 1250 (*Smith*) [addressing a probation condition]; *In re Sheena K.* (2007) 40 Cal.4th 875, 890 [same]; see also *Stevens*, *supra*, 119 Cal.App.4th at p. 1233 ["The criteria for assessing the constitutionality of conditions of probation also applies to conditions of parole"].) "The essential question in an overbreadth challenge is the closeness of the fit between the legitimate purpose of the restriction and the burden it imposes on the defendant's constitutional rights—bearing in mind, of course, that perfection in such matters is impossible, and that practical necessity will justify some infringement." (*In re E.O.* (2010) 188 Cal.App.4th 1149, 1153.)

14

Lopez has a constitutional right to free association that includes the right of familial association and "'a fundamental liberty interest in companionship with his . . . child.'" (*Wolf Child*, *supra*, 699 F.3d at p. 1091.) It is undisputed that special condition no. 9 infringes that right. (*Id.* at pp. 1089, 1092 [similar restriction].) But the right "'is not absolute.'" (*Id.* at p. 1092.) An infringement of the right is not impermissibly overbroad if it is narrowly tailored to the government's interests in public safety and rehabilitation and specifically tailored to Lopez's circumstances. (*Smith*, *supra*, 152 Cal.App.4th at p. 1250.) Special condition no. 9 does not satisfy those requirements.

Special condition no. 9 broadly prohibits Lopez from having any direct or indirect contact or communication with his daughter. The stated basis for the newly imposed restriction was a description of the commitment offense. Given that Lopez was convicted of committing a lewd and lascivious act against his four-year-old stepdaughter when he lived with her, restricting Lopez's contact with his five-year-old biological daughter has a direct relationship to the crime of which Lopez was convicted and forbids conduct that is reasonably related to preventing future criminality. (*People v. Mills* (1978) 81 Cal.App.3d 171, 182.) Special condition no. 9 thus serves the compelling government interests of keeping a young child safe and preventing recidivism. (*Jonathan L. v. Superior Court* (2008) 165 Cal.App.4th 1074, 1104 ["There can be no dispute that the child's safety is a compelling governmental interest"]; *Mills*, at p. 181 [preventing recidivism by sex offenders is a legitimate state interest].)

15

"'But "[i]t is not enough to show that the Government's ends are compelling; the means must be carefully tailored to achieve those ends."'" (*Stevens*, *supra*, 119 Cal.App.4th at p. 1237.) Special condition no. 9 does not satisfy that requirement. (*Smith*, *supra*, 152 Cal.App.4th at p. 1250.)

Nothing in the record supports the Department's imposition of a complete ban on Lopez's contact with Sofia in 2023. The commitment offense has not changed since Lopez was released on parole in 2017. But Lopez was allowed to live with his daughter for the five years before special condition no. 9 was imposed—that is, Sofia's entire life—with the limitation that he could not have any unsupervised contact with her. There was no indication in the annual discharge review reports filed in 2020 through 2023 that Lopez was violating that condition or was engaging in any inappropriate conduct toward Sofia. In the reviews conducted in the years preceding the modification, the parole division staff expressed concern that Sofia was approaching or had reached the age at which Lopez's stepdaughter was sexually abused, but no one recommended modification of the parole condition allowing Lopez to live with Sofia. The Department instead continued to allow Lopez to live with his daughter on the condition that they have no unsupervised contact. Moreover, in 2022, shortly after Sofia turned four years old and thus was the same age at which Lopez's stepdaughter was abused, the unit supervisor even recommended discharging Lopez from parole, noting that Lopez had performed excellently on parole and that the concern about Lopez's living with his daughter had not led anyone to recommend that such contact be prohibited. No one expressed any concern

16

about Lopez living with his daughter in the 2023 report, when the conditions were modified. The parole division thus did not have any new information tending to show that Lopez presented any greater danger to Sofia by living with her than he had previously.

Special condition no. 9 is not narrowly tailored to these circumstances "to interfere as little as possible" with Lopez's constitutionally protected right to familial association. (*People v. Bauer* (1989) 211 Cal.App.3d 937, 944.) It is extremely broad and prohibits Lopez from have any contact with Sofia—not only in-person contact but also video calls, voice calls, and even written communication—despite the absence of any evidence of problematic behavior during their years of supervised in-person contact. Given the circumstances, there are far less restrictive means by which the Department could have achieved its goals. (*People v. Beach* (1983) 147 Cal.App.3d 612, 623.) For example, assuming for the sake of argument that some change in Lopez's parole conditions was warranted by Sofia's age, there is still no evidence that allowing supervised visits with Sofia in a public setting or supervised voice or video calls would fail to achieve the goals of protecting Sofia and preventing recidivism by Lopez. Because special condition no. 9's blanket prohibition of all contact between Lopez and Sofia is not narrowly tailored to his circumstances, special condition no. 9 is an unconstitutionally overbroad infringement of Lopez's right of familial association.

We accordingly grant the petition and order the Department to strike special condition no. 9. Because we conclude that special condition no. 9 is unconstitutionally

17

overbroad, we need not decide whether it was imposed in an unconstitutionally arbitrary manner.

## DISPOSITION

The petition for writ of habeas corpus is granted.  The Department is ordered to strike special condition no. 9 and to reinstate former special condition no. 67, which allowed Lopez to live with his daughter so long as his contact with her is supervised at all times by specified persons.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ
                                                                                                    J.

We concur:

McKINSTER
                Acting P. J.

MILLER
                        J.